Holly Pranger (SB#215270)
Scott Lonardo (SB#285001)
**PRANGER LAW PC**
88 Guy Place, Suite 405
San Francisco, CA 94105
Tel:  (415) 885-9800
Fax: (415) 944-1110
hpranger@prangerlaw.com
slonardo@prangerlaw.com

Attorneys for Plaintiff Healthvana, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEALTHVANA, INC.,<br>a Delaware corporation,<br><br>       Plaintiff,<br><br>  v.<br><br>TELEBRANDS CORP., a New Jersey Corporation; HEMPVANA, LLC, a Delaware Limited Liability Company; BULBHEAD.COM, LLC; a Delaware Limited Liability Company; and HEALTH BLOOM, LLC, a Delaware Limited Liability Company,<br><br>       Defendants. | Case No. 2:20-cv-4305<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>1. **TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br>2. **UNFAIR COMPETITION [15 U.S.C. § 1125(a)(1)(A)]**<br>3. **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br>4. **UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE, § 17200, *ET SEQ.***<br>5. **FALSE ADVERTISING [15. U.S.C. § 1125(a)(1)(B)]**<br>6. **FALSE ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE, § 17200, *ET SEQ.***<br>7. **VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT [15. U.S.C. § 1125(d)]**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff Healthvana, Inc. ("Healthvana"), for its complaint against defendants Telebrands Corp. ("Telebrands"), Hempvana, LLC ("Hempvana"), Bulbhead.com, LLC ("Bulbhead"), and Health Bloom, LLC (collectively, "Defendants") alleges as follows:

## NATURE OF THE ACTION

1.      This action for trademark infringement and false advertising demonstrates how a crisis brings out the best in some companies and the worst in others.

2.      Since 2014, Plaintiff Healthvana has operated with the mission to help improve healthcare through the use of technology.  This small Los Angeles-based company makes a big impact throughout the country by offering its digital health platform where healthcare providers can better manage and communicate with their patients, while providing patients a mobile phone friendly way of staying on top of their health.  Healthvana's platform has delivered over 15 million lab results to patients in more than twenty states across the United States under the registered trademark HEALTHVANA.  In the face of the COVID-19 pandemic, Healthvana immediately expanded its respected platform, which is particularly well-suited to the testing demands of the crisis, to work with healthcare providers, cities, states, and businesses.  It is also assisting with digital contact tracing and providing other valuable information such as heat maps to help track infection trends.

3.      Healthvana's platform is so successful and trusted that the City of Los Angeles and Los Angeles County recently designated Healthvana to deliver test results at many of their drive-thru and walk-thru testing centers, including eight testing centers in the City of Los Angeles and ten centers in other parts of Los Angeles County.  Healthvana's employees are engaging in a tireless effort to help combat the COVID-19 crisis and ultimately provided the critical information that can empower people to stop the spread of this infection and possibly end the pandemic.

COMPLAINT

4.     On the other hand, in the face of the COVID-19 pandemic, Defendant Telebrands, "the foremost consumer products direct to marketing company in the world," and its affiliates launched an instant business running national television ads promising delivery of "Healthvana" hand sanitizer for $14.99 per bottle. Defendant Health Bloom, believed to be organized at the direction of Telebrands, was incorporated on March 5, 2020 as the COVID-19 crisis unfolded in the United States, and the website www.healthvanafoam.com was registered on March 12, 2020.  Defendants' sales of "Healthvana" hand sanitizer began around March 18, 2020, and for weeks later, angry customers who had been charged high prices but who had not received delivery of their hand sanitizer targeted the real Healthvana with their complaints and anger.

5.     Because Defendants used Healthvana's registered HEALTHVANA trademark to sell their hand sanitizer, the backlash was directed not at Defendants, but at Healthvana.  Angry consumers took to social media to accuse Healthvana of "profit over people" and "taking advantage of people during a crisis by jacking up prices on things that were hoarded."  Healthvana was accused on social media of being "Liars!," and consumers called for the federal government to investigate Healthvana.  A credit card fraud department contacted Healthvana about charges for hand sanitizer products that raised red flags.  Messages submitted through the Healthvana website were filled with expletives and accused Healthvana of "price gouging" and being a "bunch of crooks."  As a result, Healthvana was forced to take valuable time and effort from its COVID-19 testing efforts to defend its name, explain to hundreds of upset people that it was a trusted source for COVID-19 test results, not a hand sanitizer retailer, and respond to the angry queries from confused consumers who were demanding delivery of product or refunds.  The trust and relationships that Healthvana worked so hard for years to build suddenly came into question as investors, partners, and customers saw television ads of its distinctive "Healthvana" name attached to an over-priced hand sanitizer.

3

COMPLAINT

6.      Although Healthvana put Defendants on notice of its infringing conduct on March 20, 2020, Defendants did not rebrand to "Handvana" until weeks later in early April 2020.  Even then, the confusion and anger continued and still persists as of the filing of this Complaint.  Angry consumers who have not received their orders from Defendants, and who see "Healthvana" on their credit card statements, continue to contact Healthvana.  Defendants also continue to prosecute applications to register the HEALTHVANA mark with the U.S. Patent and Trademark Office. Healthvana brings this action to stop Defendants' unlawful and harmful conduct, to force Defendants to publicly correct the record, and to compensate Healthvana for the damages it has suffered.

## JURISDICTION AND VENUE

7.      This is a civil action for, inter alia, trademark infringement, unfair competition, false advertising, and cybersquatting.  *See* 15 U.S.C. §§ 1114; 1125.

8.      This Court has original jurisdiction pursuant to 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338 (trademark, copyright, and unfair competition), and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Defendants because Defendants do and have done substantial business in this district, including operating interactive websites at www.healthvanafoam.com, www.handvanafoam.com, www.bulbhead.com, www.myhydrocleangel.com, offering to sell and ship their infringing hand sanitizer, shampoo, and gel products throughout the country, including in this District, have caused confusion among consumers throughout the country, including among consumers residing in this District, and have committed willful and deliberate acts and omissions with knowledge that the effects of such acts and omissions would harm Healthvana in the State of California and in this District.

10.      Venue is proper in this Division of this Judicial District pursuant to 28

COMPLAINT

1  U.S.C. § 1391(b)(2) and (b)(3).

2  **PARTIES**

3  11.     Plaintiff Healthvana is a corporation organized under the laws of the

4  State of Delaware with a business address at 7162 Beverly Blvd., #238, Los

5  Angeles, California 90036.  Healthvana is the owner of the federally registered

6  HEALTHVANA trademark (the "HEALTHVANA Mark") that Defendants have

7  infringed willfully.

8  12.     Defendant Hempvana is a limited liability company organized under

9  the laws of the State of Delaware with a business address at 2901 Collins Ave.,

10  Miami Beach, Florida 33140.  Hempvana offered the infringing Healthvana hand

11  sanitizer, gel, and shampoo for sale on the website www.healthvanafoam.com.

12  Hempvana also owns U.S. Application Serial Nos. 88504451 and 88784770 to

13  register the mark HEALTHVANA for a variety of goods, including pharmaceuticals

14  and vitamin and mineral supplements.

15  13.     Defendant Bulbhead is a limited liability company organized under the

16  laws of the State of Delaware with a business address at 79 Two Bridges Road,

17  Fairfield, New Jersey 07004.  On information and belief, Defendant Telebrands

18  launched Bulbhead in or around 2015 to build a long-term branding effort around

19  "bright ideas."  Bulbhead offered the infringing Healthvana hand sanitizer, gel, and

20  shampoo for sale on its website, www.bulbhead.com.

21  14.     Defendant Telebrands is a corporation organized under the laws of the

22  State of New Jersey with a business address at 79 Two Bridges Road, Fairfield, New

23  Jersey 07004.  Telebrands shares the same business address as Bulbhead.

24  Telebrands describes itself as "a leading direct television marketing company and

25  the original creator of the 'As Seen On TV' logo and category of trade."  Telebrands

26  claims copyright ownership over the website www.healthvanafoam.com through

27  which Defendants have sold their infringing products.

28  15.     Defendant Health Bloom is a corporation organized and existing under

5

COMPLAINT

the State of Delaware with a business address at 2901 Collins Ave., Miami Beach, Florida 33140.  Health Bloom shares the same business address as Hempvana. Health Bloom owns U.S. Application Serial No. 88847447 to register the mark HEALTHVANA HYDROCLEAN for "Disinfecting wipes; disinfectant sprays; disinfectants; disinfecting handwash; disinfectant soap; hand sanitizer and disinfecting foam" and U.S. Application Serial No. 88840561 to register the mark HEALTHVANA for a variety of goods, including preparations for pain and dietary and nutritional supplements.

**HEALTHVANA'S HIPAA-SECURE, MOBILE FRIENDLY PORTAL**

16.     Since 2014, Healthvana has been operating as a digital health platform used by healthcare providers and patients throughout the United States, primarily those focusing on prevention and management of HIV and sexually transmitted infections.

17.     Healthvana's platform digitally delivers test results through a secure portal, including to patients' mobile phones, through its website and applications, which are compliant with the Health Insurance Portability and Accountability Act ("HIPAA").  To date, Healthvana has delivered more than 15 million lab results to more than 400,000 patients nationwide.

18.     Healthvana also allows healthcare providers to conduct contact-free mobile-registration intake, allowing patients to check in to visits from any tablet, smartphone, or computer.

19.     Healthvana has built its business on trust and relationships, earning the confidence of patients and healthcare providers alike through the proven track record of its secure platform.

20.     Because of its proven track record in secure test result delivery and contact-free registration intake, Healthvana is especially well-suited to make a much-needed and meaningful impact with COVID-19 testing efforts.

6

COMPLAINT

## **HEALTHVANA'S INSTRUMENTAL ROLE IN COVID-19 TESTING**

21.     Healthvana has been on the forefront of efforts to combat the COVID-19 virus by operating as an all-in-one digital test results delivery, contact tracing, and reporting platform.  It currently works with healthcare providers, companies, cities, and states as part of that effort.

22.     Since the start of the COVID-19 pandemic, Healthvana has delivered more than one hundred thousand COVID-19 test results directly to patients' mobile phones.  Below is a screenshot of a sample of how a test result might appear on the mobile phone of a patient receiving COVID-19 test results.



23.     A test result will report either a finding of "Negative," meaning the test found no evidence that the patient was infected with the COVID-19 virus; "Positive," meaning that the coronavirus that causes COVID-19 was detected; or "Need New Sample," meaning that there was a problem with the sample or the information the patient provided and the test cannot be completed.

COMPLAINT

24.     Healthvana provides patients with a mobile record that they can share with doctors, employers, and people with which they have been in contact.  This is critical to helping patients obtain the care they need and to permit everyone from front-line workers to epidemiologists understand who may have been exposed to the COVID-19 virus.

25.     In addition to providing test results and a mobile record, Healthvana provides its customers with advanced reporting tools and heat maps allowing them to identify trends of infections in certain areas. This information can allow entities like state and local governments to better understand where COVID-19 "hot spots" are developing to devote resources to targeted areas.

26.     Because of the importance of Healthvana's digital test results delivery, contact tracing, and reporting platform to fighting the COVID-19 pandemic, Healthvana has been involved in discussions with all levels of the government across the United States

27.     The City of Los Angeles and Los Angeles County have designated Healthvana to deliver test results at many of their drive-thru and walk-thru testing centers, including testing centers at the Hotchkin Memorial Training Center, the Hansen Dam Recreation Center, the Crenshaw Christian Center, VA Lot 15 (Jackie Robinson Stadium), Lincoln Park, Carbon Health/Echo Park, West Valley, Kedren Community Health Center, Antelope Valley Mall, Pomona Fairplex Gate 17, South Bay Galleria, Santa Clarita, East LA College, Charles R. Drew Campus, San Gabriel Valley Airport, Bellflower City Hall, The Forum, and Harbor UCLA Hospital.

## **HEALTHVANA'S TRADEMARK RIGHTS**

28.     Healthvana has been using the HEALTHVANA Mark continuously throughout the United States since 2014 in connection with its digital health platform.  In that time, Healthvana has spent a substantial amount of time, money and resources to promote, advertise, and protect the HEALTHVANA Mark, and it has developed extremely valuable goodwill in the HEALTHVANA mark.

COMPLAINT

29.     Healthvana also owns U.S. Federal Trademark Registration No. 4,857,628 for the HEALTHVANA Mark for use in connection with a variety of goods and services, including its software and app that allows patients and healthcare providers to manage personal medical records and consulting services in the field of healthcare and a website featuring health care information.  A true and correct copy of U.S. Registration No. 4,857,628 is attached to this Complaint as **Exhibit A**.

30.     Healthvana applied to register HEALTHVANA on July 8, 2014, and U.S. Registration No. 4,857,628 issued on November 24, 2015.

31.     Under the Lanham Act, Healthvana's registration of the HEALTHVANA Mark is prima facie evidence of the validity of the HEALTHVANA Mark, Healthvana's ownership of the HEALTHVANA Mark, and Healthvana's exclusive right to use the HEALTHVANA Mark in commerce on or in connection with the goods or services specified in the registration.  *See* 15 U.S.C. § 1115(a).

32.     Under the Lanham Act, Healthvana's registration of the HEALTHVANA Mark also constitutes constructive notice to the public, including Defendants, of Healthvana's claim of ownership of the HEALTHVANA Mark.  *See* 15 U.S.C. § 1072.

## DEFENDANTS' EFFORTS TO CAPITALIZE ON INCREASED HAND SANITIZER DEMAND DUE TO COVID-19

33.     As the COVID-19 pandemic spread throughout the world and the United States in February and March 2020, demand for hand sanitizer products increased as people around the world sought these products to kill viruses such as COVID-19.  For example, a CNBC article dated March 3, 2020,[1] entitled *Sales Of*

---

[1] Available at https://www.cnbc.com/2020/03/03/coronavirus-hand-sanitizer-sales-surge-leading-to-price-hikes.html.

COMPLAINT

*Hand Sanitizer Are Skyrocketing Due To The Coronavirus, Leading To Rationing and Price Hikes*, cited a Nielsen report stating that "hand sanitizer purchases in the United States were up 73% during the four weeks until February 22, with analysts predicting sales 'won't peak for some time.'"

34.     On information and belief, one or more Defendants began selling hand sanitizer products under the name "Healthvana" on or around March 18, 2020, including through a website at www.healthvanafoam.com.

35.     According to the WHOIS query and response protocol that provides information about domain name registrations, the domain www.healthvanafoam.com was registered on March 12, 2020.  The records for this domain do not reveal the owner of the domain because it was registered using a privacy protection service.

36.     According to the incorporation records from the Delaware Secretary of State, Defendant Health Bloom was incorporated on March 5, 2020.  Health Bloom shares the same business address as Defendant Hempvana in Miami Beach, Florida.

37.     Two weeks after its incorporation, on March 25, 2020, Health Bloom filed U.S. Application Serial No. 88/847,447 to register the trademark HEALTHVANA HYDROCLEAN for "Disinfecting wipes; disinfectant sprays; disinfectants; disinfecting handwash; disinfectant soap; hand sanitizer and disinfecting foam."

38.     A true and correct copy of Defendants' www.healthvanafoam.com website is attached hereto as **Exhibit B**, and a screenshot of a portion of the website is shown below:

10

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   39.    Through the www.healthvanafoam.com website, one or more

17   Defendants offered "Healthvana" hand sanitizer for sale in three different quantities

18   and prices:  a single bottle of seven fluid ounces for $14.99 plus $6.99 in shipping

19   and handling, a six-pack of bottles for $77.94 with free shipping and handling, and a

20   twelve-pack of bottles for $119.88 with free shipping and handling.  A true and

21   correct copy of a screen shot of the www.healthvanafoam.com website is shown

22   below:

23
24
25
26
27
28

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15





16   40.   On information and belief, one or more Defendants aggressively

17   marketed the infringing "Healthvana" hand sanitizer product, including through

18   television commercials, Defendants' websites, and social media such as YouTube.

19   41.   Telebrands describes itself as "a leading direct television marketing

20   company and the original creator of the 'As Seen On TV' logo and category of

21   trade." On information and belief, Telebrands assisted in the marketing of the

22   Healthvana hand sanitizer, including on television networks such as Fox News.

23   42.   One or more Defendants also advertised the "Healthvana" hand

24   sanitizer through YouTube videos which received tens of thousands of views.

25   43.   According to one litigation tracking tool, Telebrands has been named as

26   a defendant in 135 lawsuits, and according to other public records, Telebrands

27   settled a fraud investigation by the New Jersey Attorney General's office for

28   $550,00, and recently lost a $12.3 million jury verdict for willful patent

12

COMPLAINT

infringement.

## WIDESPREAD CONSUMER CONFUSION AND ANGER

44.    Defendants' "Healthvana" hand sanitizer immediately generated consumer confusion and anger directed at Plaintiff Healthvana, exacerbated by the widespread marketing on television and online.

45.    Starting on March 19, 2020, approximately one day after Defendants began selling the "Healthvana" hand sanitizer, Plaintiff Healthvana began to receive correspondence from confused consumers who had ordered, or attempted to order, Defendants' "Healthvana" hand sanitizer.

46.    Healthvana quickly realized that consumers had seen advertisements for "Healthvana" hand sanitizer and had gone to Healthvana's website at www.healthvana.com to inquire about the product, which website has a page that permits users to submit messages.

47.    For example, of the many communications Healthvana received on March 19, 2020 through its website, one confused consumer wrote to Healthvana: "I tried to order healthvana foam tonight  The automated system decided to do it's [sic] thing after I gave my credit card number.  I don't know what its [sic] sending or how much they are charging because they told me nothing … I need someone to call me ASAP at the number above or [redacted]."

48.    On March 20, 2020, another confused consumer wrote to Healthvana: "How to get the sanitizer shown on a commercial I saw on Fox News channel.  The commercial said to go to the website, but I see nothing on here about it."

49.    Many other users submitted similar inquiries, accusing Healthvana of not honoring a discount code and overcharging for the product.

50.    To combat this confusion, on March 20, 2020, Healthvana's CEO Ramin Bastani clarified publicly via Twitter that Healthvana was not affiliated with "Healthvana" hand sanitizer and "tagged" Telebrands, Bulbhead, and Telebrands CEO AJ Khubani to request that they cease using the HEALTHVANA Mark,

13

COMPLAINT

1 writing "Please remove our registered trademark name @TeleBrands

2 @BulbHeadIdeas @AJKhubani."  A true and correct copy of a screenshot of the

3 tweet is shown below:

4



22      51.    Unfortunately, Healthvana's disclaimer to consumers did not stem

23 consumer confusion, and its demand to Telebrands and Bulbhead went unanswered.

24 Indeed, five days after Healthvana's public effort to correct the mounting trademark

25 confusion, on March 25, 2020, Health Bloom doubled down and filed U.S.

26 Application Serial No. 88/847,447 to register the trademark HEALTHVANA

27 HYDROCLEAN for "Disinfecting wipes; disinfectant sprays; disinfectants;

28 disinfecting handwash; disinfectant soap; hand sanitizer and disinfecting foam."

COMPLAINT

52.     On March 22, 2020, one consumer wrote to Healthvana: "I am a little confused.  I saw an ad on tv to order some hand sanitizer at healthvanafoam.com.  Is that you?"

53.     Another consumer wrote to Healthvana: "There is a product advertised on a website called healthvanafoam.com.  Is this you?  Are they affiliated with you in any way?  Or is it a scam?  I'm asking because they're advertising hand sanitizer for sale."

54.     Soon thereafter, consumer confusion turned to anger directed at Healthvana.  On information and belief, and based on the experiences of Healthvana's and undersigned counsel's use of the www.healthvanafoam.com website, the www.healthvanafoam.com website became inoperable in part, and consumers were unable to order the "Healthvana" hand sanitizer or contact Defendants.  On information and belief, and based on a review of messages from consumers, this generated more confusion and anger aimed at Healthvana.

55.     On March 25, 2020, one consumer wrote to Healthvana: "You should be ashamed of yourselves!  Price gouging!! 15.00$ for a bottle of hand sanitizer?  WTF.  Should be fined for raising prices in a time like this!  Shameful."

56.     Confused and angry consumers posted their misdirected complaints about Healthvana on social media as well.  On March 24, 2020, one consumer tweeted "I was shocked to see your product, a foaming #HandSanitizer being sold for $14.99 on late night TV? Hospitals, 1st responders and so many are desperate for this item as well as masks, etc.  Disgusted at 'Profit over People'?  What are you doing?  Why?  #CoronavirusPandemic."  A true and correct copy of a screenshot

COMPLAINT

showing this post is shown below:



57.     On March 29, 2020, one consumer posted a series of tweets calling Healthvana "Liars!", stating that Healthvana needed to be "investigated," and stating "Oh pleazzzzeee its on your commercials.  Taking advantage of people during a crisis by jacking up prices on things that were hoarded dont make excuses."  A true and correct copy of this series of tweets is shown below:

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    58.    In addition, Healthvana's investors and partners inquired as to whether

16  Healthvana had expanded to the hand sanitizer business, causing embarrassment for

17  Healthvana's leadership.

18    59.    While angry consumers sent messages to Healthvana and posted social

19  media complaints about Healthvana, Healthvana was busy with its work to combat

20  COVID-19 and provide important testing support, but instead was forced to devote a

21  great deal of valuable time to combat the confusion that Defendants were causing.

22    **DEFENDANTS' REBRAND TO "HANDVANA"**

23    60.    Unable to receive a response from Defendants, Healthvana retained the

24  undersigned counsel to send a cease and desist letter to Defendants.

25    61.    On March 28, 2020, undersigned counsel sent a cease and desist letter

26  to Hempvana, copying Telebrands and trademark counsel of record for all

27  Defendants.

28    62.    On March 30, 2020, counsel for Healthvana and Defendants as well as

COMPLAINT

Healthvana CEO Ramin Bastani and Telebrands COO Bala Iyer held a conference call to discuss the issues raised in Healthvana's March 28, 2020 letter.  Mr. Bastani had to step away from his work at a testing center in Los Angeles to join the call.

63.    That same day, March 30, 2020, according to the WHOIS query and response protocol that provides information about domain name registrations, the domains www.handvana.com and www.handvanafoam.com were registered.  The records for this domain do not reveal the owner of the domain because it was registered using a privacy protection service.

64.    On March 31, 2020, Telebrands COO Bala Iyer represented that Defendants would revise the television commercials to remove reference to "Healthvana," would change the trademark for the hand sanitizer product, would change the website www.healthvanafoam.com by April 1, 2020, and would communicate to customers to provide contact information for Defendants.  In other discussions, Mr. Byer also represented that Defendants had sold approximately 28,000 units of hand sanitizer per day.

65.    On information and belief, on April 4, 2020, the website www.healthvanafoam.com was still active.

COMPLAINT

66.    In the following days, Defendants eventually rebranded to "Handvana" and moved the website to www.handvanafoam.com.  A true and correct copy of a screenshot of the revised website is shown below:






67.    The "Handvana" website includes a frequently asked questions page that includes the following question: "Why does Handvana cost so much isn't this price gouging?"

68.    On information and belief, the inclusion of this question about price gouging on the "Handvana" website indicates that consumers have frequently accused Defendants of price gouging.

## CONTINUED CONFUSION AND ANGER

69.    Despite Defendants' rebranding to "Handvana," consumer confusion and anger directed at Healthvana continued.  On information and belief, this confusion and anger continued because consumers who had ordered "Healthvana"

19

COMPLAINT

hand sanitizer had not received their orders for weeks and/or the merchant name appearing on consumers' credit card statements continued to reflect "Healthvana."

70.     For example, on April 25, 2020, a consumer wrote to Healthvana: "I ordered your hand sanitizer advertised on television. I was charged for the same. I received an email saying it shipped a week ago from California. If I don't receive it by Monday, I will dispute the charge and refuse delivery. Why doesn't COVID prevent you from charging my credit card but doesn't seem to in any way impede your ability to collect my money? I think you're a bunch of crooks."

71.     When Healthvana responded to the confused consumer to clarify that it was not the hand sanitizer company, the consumer wrote to Healthvana: "F*%k you. You took my money and delivered nothing. Shall I take my matter to the FCC (since it was sold via television)? The FBI because it was fraud committed across state lines? The California Attorney General? The Better Business Bureau? or just dispute the charge on my credit card, a**holes."

72.     A fraud investigator from a credit card company also reached out to Healthvana to determine if a charge for "bulbhed Healthvana $119.88" was fraud.

73.     Healthvana received handwritten notes and voicemails from confused consumers inquiring about the status of their order, complaining about being "grossly overcharged," or stating "You guys took $127 dollars out of my account and I have never received any treatment stuff from you guys …."

COMPLAINT

74.     In addition, Handvana's Facebook page at
https://www.facebook.com/handvana still lists "Related Pages" and includes
Plaintiff Healthvana as a "related company."



75.     On information and belief, Red Copper Pan is another product that
Defendant Telebrands markets.  Healthvana is not related to Handvana, Hempvana,
or Red Copper Pan.

## DEFENDANTS' FALSE ADVERTISING

76.     Defendants also made false or misleading statements in connection
with the promotion of their "Healthvana" hand sanitizer.

77.     The original www.healthvanafoam.com page included a badge stating
"Trusted Brand Since 2015" as shown in Exhibit B and the true and correct copy of
the screenshot below:



78.     This statement is false because, as stated above, "Healthvana" hand
sanitizer was not sold until March 2020.  Plaintiff Healthvana, however, was
founded close to this date, in 2014.

21

79.   The original www.healthvanafoam.com page included a badge stating "Over 100 Million Satisfied Customers" as shown in Exhibit B and the true and correct copy of the screenshot below:



80.   On information and belief, this statement is false because, as stated above, "Healthvana" hand sanitizer was not sold until March 2020 and could not possibly have been sold to "100 Million Satisfied Customers" the same month it launched.

81.   As shown in Exhibit B and the screenshots below, the "Healthvana" name was accompanied by a federal trademark registration symbol (®) on the www.healthvanafoam.com website.



82.   However, only Plaintiff Healthvana owns a federal trademark registration for HEALTHVANA.  None of the Defendants owns a federal trademark registration for HEALTHVANA.

22

COMPLAINT

83.     As shown on Exhibit B and the screenshot below, Telebrands claimed copyright ownership of the website www.healthvanafoam.com with a 2019 copyright notice.



84.     The website www.healthvanafoam.com website was not registered until March 12, 2020.

85.     The websites at www.healthvanafoam.com and now www.handvanafoam.com include the statement that "HydroClean™ is formulated in the USA and uses an ingredient from an FDA registered facility that kills up to 99.9% of germs. **So trusted, it's used in hospitals**." (emphasis added).

86.     On information and belief, the statement "So trusted, it's used in hospitals" is likely to mislead consumers into believing that Defendants' "Healthvana" hand sanitizer is used in hospitals, even though the product was only released around March 2020, the same time this statement was made.

87.     On information and belief, Defendants falsely and misleadingly represented that "Healthvana" hand sanitizer is a "Trusted Brand Since 2015" and has "Over 100 Million Satisfied Customers," that Defendants own a federal registration for HEALTHVANA, that Defendants' website had been active since 2019, and that the "Healthvana" product is "used in hospitals," to give the false or misleading impression that the website and "Healthvana" hand sanitizer existed is an established brand that existed long before the COVID-19 pandemic.  On

23

COMPLAINT

information and belief, this further exacerbated confusion among consumers that Healthvana was affiliated, connected, or associated with Defendants' "Healthvana" products.

## COUNT I

### Federal Trademark Infringement

### (15 U.S.C. § 1114(1))

88.     Healthvana incorporates by reference the foregoing allegations as if set forth fully herein.

89.     Healthvana owns U.S. Registration 4,857,628 for HEALTHVANA for the following goods and services:

- **Class 9:**  Computer software, namely, downloadable software and mobile applications for healthcare recipients for managing personal health, locating providers of healthcare services, communicating with providers of healthcare services, and obtaining, storing, and sharing personal medical and healthcare records; and computer software, namely, downloadable software and mobile applications for healthcare providers for tracking, storing, and sharing medical and healthcare records with healthcare recipients

- **Class 42:**  Application service provider (ASP) featuring software for use in connection with medical data and healthcare management, namely, organizing, tracking, storing, and sharing of health and medical records by and between healthcare providers and healthcare recipients; providing software as a service (SaaS) for the storage and verification of the existence of user and health provider supplied health information and documents, and the granting and controlling of access to the information and documents; temporary use of online non-downloadable software and interactive website featuring technology that allows healthcare recipients to manage personal health, locate providers of healthcare services, communicate with providers of healthcare services, and obtaining, store, and share personal health and

24

COMPLAINT

medical records; providing temporary use of online non-downloadable computer for healthcare providers for tracking, storing, and sharing healthcare and medical records with healthcare recipients

- **Class 44:**  Consulting services in the field of healthcare; interactive website featuring healthcare information for healthcare providers for tracking, storing, and sharing healthcare and medical records with healthcare recipients

90.     Healthvana filed the application that matured into U.S. Registration 4,857,628 on July 8, 2014, and the registration issued on November 24, 2015.

91.     Healthvana used the HEALTHVANA Mark in commerce prior to the time Defendants began to use "Healthvana" and before any priority date claimed by Defendants for "Healthvana."

92.     Defendants' use of "Healthvana" is not authorized by Healthvana.

93.     Defendants' use in commerce of the "Healthvana" mark in connection with the sale, offering for sale, distribution, or advertising of its products is likely to cause confusion, or to cause mistake, or to deceive, in violation of the Lanham Act, 15 U.S.C. § 1114.

94.     Defendants acted with knowledge of Healthvana's exclusive rights and goodwill in the HEALTHVANA Mark, as Defendants had constructive notice of Healthvana's federal trademark registration for HEALTHVANA and actual knowledge of Healthvana's rights at least as early as March 20, 2020.  On information and belief, Defendants had actual knowledge of Healthvana's HEALTHVANA Mark at the time they attempted to register the domain www.healthvanafoam.com, on or around March 12, 2020.  Accordingly, on information and belief, Defendants' conduct is willful, deliberate, and intentional.

95.     Healthvana has suffered damages and irreparable harm as a result of Defendants' infringement and will continue to suffer irreparable injury unless Defendants' and its officers, agents, and employees, and all persons acting in concert with them, are enjoined from engaging in any further such acts in violation

25

COMPLAINT

of 15 U.S.C. § 1114(1).

## COUNT II

### Federal Unfair Competition

### (15. U.S.C. § 1125(a)(1)(A))

96.     Healthvana incorporates by reference the foregoing allegations as if set forth fully herein.

97.     Healthvana uses the HEALTHVANA Mark in interstate commerce for a digital health platform and related goods and services since at least as early as July 2014.  Healthvana has been continuously using the HEALTHVANA Mark for such products and services from a time prior to the date Defendants began use in interstate commerce of "Healthvana" and before any priority date claimed by Defendants.

98.     The HEALTHVANA Mark is inherently distinctive.

99.     Defendants' use of "Healthvana" is not authorized by Healthvana.

100.    Defendants' use in commerce of "Healthvana" is likely to cause confusion or mistake or to deceive as to the affiliation, connection, or association of Defendants with Healthvana, or as to the origin, sponsorship, or approval of Defendants' goods and services, in violation of 15 U.S.C. § 1125(a)(1)(A).

101.    Defendants acted with knowledge of Healthvana's exclusive rights and goodwill in the HEALTHVANA Mark, as Defendants had constructive notice of Healthvana's federal trademark registration for HEALTHVANA and actual knowledge of Healthvana's rights at least as early as March 20, 2020.  On information and belief, Defendants had actual knowledge of Healthvana's HEALTHVANA Mark at the time they attempted to register the domain www.healthvanafoam.com, on or around March 12, 2020.  Accordingly, on information and belief, Defendants' conduct is willful, deliberate, and intentional.

102.    Healthvana has suffered damages and irreparable harm as a result of

26

Defendants' unfair competition and will continue to suffer irreparable injury unless Defendants' and its officers, agents, and employees, and all persons acting in concert with them, are enjoined from engaging in any further such acts in violation of 15 U.S.C. § 1125(a)(1)(A).

## COUNT III

### Trademark Infringement and Unfair Competition

### (California Common Law)

103.   Healthvana incorporates by reference the foregoing allegations as if set forth fully herein.

104.   Healthvana possesses common law rights in the HEALTHVANA Mark in the State of California due to its extensive promotion, sales, and rendering of services within the State of California.

105.   The HEALTHVANA Mark has achieved a high degree of consumer recognition nationwide and within the State of California.

106.   Defendants' infringement of Healthvana's HEALTHVANA Mark, as described above, constitutes common law trademark infringement and unfair competition in violation of the common law of the State of California.

107.   Defendants' use of "Healthvana" is not authorized by Healthvana.

108.   Defendants' unauthorized use of the HEALTHVANA Mark, as described above, has caused and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Healthvana.

109.   Defendants' acts are willful, deliberate, and intended to confuse the public and to injury Healthvana.

110.   Healthvana has suffered damages and irreparable harm as a result of Defendants' infringement and unfair competition and will continue to suffer irreparable injury unless Defendants' and its officers, agents, and employees, and all persons acting in concert with them, are enjoined from engaging in any further such acts in violation of California common law.

COMPLAINT

## COUNT IV

### Unfair Competition

### (Cal. Bus. & Prof. Code, § 17200, *et seq.*)

111.   Healthvana incorporates by reference the foregoing allegations as if set forth fully herein.

112.   The acts described above constitute unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

113.   On information and belief, Defendants' conduct is willful, deliberate, and intentional.

114.   Healthvana has suffered damages and irreparable harm as a result of Defendants' infringement and will continue to suffer irreparable injury unless Defendants' and its officers, agents, and employees, and all persons acting in concert with them, are enjoined from engaging in any further such acts in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

## COUNT V

### Federal False Advertising

### (15. U.S.C. § 1125(a)(1)(B))

115.   Healthvana incorporates by reference the foregoing allegations as if set forth fully herein.

116.   As described above, Defendants have used in commerce false or misleading descriptions of act and/or false or misleading representations in commercial advertising or promotion which misrepresent the nature, characteristics, or qualities of Defendants' goods, services, and/or commercial activities, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

117.   On information and belief, Defendants' actions in misrepresenting the nature, characteristics, or qualities of Defendants' goods or services by making false or misleading descriptions of fact and/or false or misleading representations of fact, in commercial advertising or promotion, were willful, deliberate, intentional and/or

28

COMPLAINT

in bad faith.

118.   Healthvana has suffered damages and irreparable harm as a result of Defendants' false advertising and will continue to suffer irreparable injury unless Defendants' and its officers, agents, and employees, and all persons acting in concert with them, are enjoined from engaging in any further such acts in violation of 15 U.S.C. § 1125(a)(1)(B).

**<u>COUNT VI</u>**

**State False Advertising**

**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

119.   Healthvana incorporates by reference the foregoing allegations as if set forth fully herein.

120.   California Business & Professions Code § 17500, *et seq.* prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive members of the public to purchase products and services such as the false advertising described above.

121.   Defendants' acts and practices as described herein have deceived and/or are likely to deceive consumers.

122.   On information and belief, Defendants know that its advertising statements identified herein are untrue or misleading or, with the exercise of reasonable care, should have known that its advertising statements identified herein are untrue or misleading.

123.   Healthvana has suffered damages and irreparable harm as a result of Defendants' false advertising and will continue to suffer irreparable injury unless Defendants' and its officers, agents, and employees, and all persons acting in concert with them, are enjoined from engaging in any further such acts in violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

COMPLAINT

## COUNT VII

### Anti-Cybersquatting Consumer Protection Act

### (15 U.S.C. § 1125(d))

124.   Healthvana incorporates by reference the foregoing allegations as if set forth fully herein.

125.   On information and belief, one or more Defendants registered and used the domain www.healthvanafoam.com.  The identity of the registrant is hidden through the registrar's privacy service.

126.   Defendants did not register or use the www.healthvanafoam.com domain in connection with the bona fide offering of any goods or services before Healthvana began use of or filed its application to register the HEALTHVANA Mark.

127.   Defendants do not make a bona fide noncommercial or fair use of Healthvana's HEALTHVANA Mark on its website hosted at www.heathvanafoam.com.

128.   Defendants had constructive notice of Healthvana's federal trademark registration for HEALTHVANA and actual knowledge of Healthvana's rights at least as early as March 20, 2020.  On information and belief, Defendants had actual knowledge of Healthvana's HEALTHVANA Mark at the time they attempted to register the domain www.healthvanafoam.com, on or around March 12, 2020.

129.   Defendants' acts described above demonstrate a bad faith intent to profit from Healthvana's HEALTHVANA Mark in violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

130.   As a consequence, Healthvana is entitled to an injunction, Defendants' profits, Healthvana's damages, statutory damages, and costs of this action.

COMPLAINT

## **PRAYER**

WHEREFORE, Healthvana prays for:

1.    Entry of judgment in favor of Healthvana on all claims.

2.    Preliminary and permanent injunctive relief:

      a.    enjoining Defendants from directly or indirectly engaging in any further trademark infringement or unfair competition against Healthvana, and from aiding, abetting, encouraging, or inducing others to do so.

      b.    enjoining Defendants from directly or indirectly engaging in any further false advertising, and from aiding, abetting, encouraging, or inducing others to do so.

      c.    requiring Defendants to change the merchant name that appears on consumers' credit card statements when consumers purchase the Handvana sanitizer to something easily identifying the source and to provide a phone number in the merchant line as well;

      d.    requiring Defendants to contact every consumer of the "Healthvana" or "Handvana" hand sanitizer product to date with an email and written letter with language that is approved by Healthvana, to inform consumers that Defendants have changed the name of the "Healthvana" hand sanitizer, direct consumers to cease contacting Healthvana, and provide explicit contact information for Defendants that includes a working and responsive email, address and phone number;

      e.    requiring Defendants to add a prominent notice to the home page of the website at https://handvanafoam.com/ for the next six months that explains that Defendants were originally using the name "Healthvana"  and apologizing for the confusion that such

COMPLAINT

usage caused with the prior existing company, Healthvana, with language that is to be approved by Healthvana;

f.  requiring Defendants to recall all products bearing the "Healthvana" name that are in the possession of distributors or retailers; and

g.  requiring Defendants to surrender all labels, signs, prints packages, wrappers, receptacles, and advertisements bearing the "Healthvana" name for destruction.

3. An order directing Defendants to file with this Court and serve upon Healthvana within thirty (30) days after service upon Defendants of any injunction herein, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

4. An order requiring Defendants to withdraw Application Serial Nos. 88/840,561; 88/847,447; 88/504,451; and 88/784,770 for HEALTHVANA and HEALTHVANA HYDROCLEAN.

5. An accounting and order for Defendants to pay to Healthvana:

a.  All monetary gains, profits, and advantages derived by Defendants from the acts complained of herein;

b.  Damages incurred by Healthvana;

c.  Statutory damages for violation of 15 U.S.C. § 1125(d)(1) pursuant to 15 U.S.C. § 1117(d) in the amount of $100,000 per infringing domain name;

d.  Treble damages as provided by law and pursuant to 15 U.S.C. § 1117(a);

e.  Punitive and exemplary damages as provided by law and to be determined by the Court after a full hearing on the merits and pursuant to the laws of the State of California; and

1          f.  Healthvana's costs and disbursements in this action, including

2               reasonable attorneys' fees and prejudgment and post-judgment

3               interest, pursuant to 15 U.S.C. § 1117(a) and the laws of the

4               State of California.

5     6.    An order requiring Defendants to transfer ownership of

6          www.healthvanafoam.com to Healthvana.

7     7.    Such other and further relief, in law or equity, as this Court deems just

8          and proper.

Respectfully Submitted,

**PRANGER LAW PC**

Dated:  May 12, 2020        By: _/s/Holly Pranger_

Holly Pranger
Scott Lonardo
Attorney for Plaintiff Healthvana, Inc.

COMPLAINT

# **DEMAND FOR JURY TRIAL**

Plaintiff Healthvana demands trial by jury of all causes of action herein properly triable to a jury, consistent with Federal Rule of Civil Procedure 38.


Respectfully Submitted,

**PRANGER LAW PC**


Dated:  May 12, 2020          By: */s/Holly Pranger*
                              Holly Pranger
                              Scott Lonardo
                              Attorney for Plaintiff Healthvana, Inc.

JURY DEMAND