**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone:  310-356-4668
Facsimile:   310-388-1232

Attorneys for Defendants,
Telebrands Corp., Hempvana, LLC,
Bulbhead.Com, LLC, and Health Bloom, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEALTHVANA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TELEBRANDS CORP., a New Jersey Corporation; HEMPVANA, LLC, a Delaware Limited Liability Company; BULBHEAD.COM, LLC; a Delaware Limited Liability Company; and HEALTH BLOOM, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | CASE NO. 2:20-cv-04305-DDP-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 14, 2022<br>Time: 10:00 a.m.<br>Judge: Hon. Dean D. Pregerson<br>Crtm: 9C<br><br>Complaint Filed:   May 12, 2020<br>Trial Date:          March 15, 2022 |

# REDACTED VERSION OF DOCUMENT PROPOSED
# TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................1

I.  FACTUAL AND PROCEDURAL BACKGROUND ...................................3

    A.  Plaintiff Healthvana Inc., Its Marks and Its Goods and Services .........3

        1.  Plaintiff's "Healthvana" Mark. ......................................................3

        2.  Plaintiff's Goods and Services and Target Market .....................3

    B.  Defendant Telebrands, the Healthväna Hand Sanitizer Products, and the Target Market ...................................................................................4

    C.  Telebrands Voluntarily Changes the Product Name, Commercial, Website, and Labeling...........................................................................5

    D.  Customer Inquiries Mis-directed to Plaintiff .......................................6

II.  LEGAL STANDARD ..............................................................................7

III.  SUMMARY JUDGMENT AS TO ALL TRADEMARK INFRINGEMENT-BASED CLAIMS IS WARRANTED................................................................7

    A.  No *Sleekcraft* Analysis Is Required, As the Products Are Not Related ......................................................................................................8

    B.  Evaluation of the *Sleekcraft* Factors ....................................................10

        1.  The Parties' Marks Are Dissimilar ...........................................10

        2.  The Parties' Goods and Services Are Completely Different ......12

        3.  Plaintiff's "Healthvana" Mark is Weak Outside of Its Medical Testing Niche ...........................................................................12

        4.  The Parties Market and Sell Their Goods In Distinct Channels.12

        5.  No Intent to Deceive by Telebrands ..........................................13

        6.  The Sophistication of Plaintiff's Customers ..............................14

        7.  The Misdirected Customer Service Communications Do Not Demonstrate Actual Confusion ................................................15

        8.  Likelihood of Expansion of Product Lines ................................17

        9.  Summary of *Sleekcraft* Analysis................................................17

    C.  Judgment Should be Entered as to Plaintiff's Trademark-based Causes of Action...............................................................................................18

III.   TELEBRANDS IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUES OF DAMAGES AND PROFITS ........................................18

IV.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S FALSE ADVERTISING CLAIMS ...................................21

    A.   Lanham Act .........................................................................21

    B.   Cal. Bus, Prof. Code § 17500 ..............................................23

V.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S ACPA CLAIM .......................................................24

CONCLUSION ....................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*4 Pillar Dynasty LLC v. N.Y. & Co.*,
   933 F.3d 202 (2d Cir. 2019) ................................................................20, 21

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
   356 F. Supp. 3d 889 (N.D. Cal. 2018)............................................................24

*A White & Yellow Cab, Inc. v. Uber Techs., Inc.*,
   2017 U.S. Dist. LEXIS 49803 (N.D. Cal. March 31, 2017) ........................24

*AAA of N. Cal. v. GM LLC*,
   367 F. Supp. 3d 1072 (N.D. Cal. 2019)..........................................................19

*Airhawk Int'l, LLC v. Ontel Prods. Corp.*,
   2020 WL 2306440, 2020 WL 2306440  (S.D. Cal. May 8, 2020)..........19, 20

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ....................................................8, 10, 14

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. Jan. 22, 2021)................................................................

*Bally Total Fitness Holding Corp. v. Faber*,
   29 F. Supp. 2d 1161 (C.D. Cal. 1998)..................................................8, 9, 10

*BNC Bancorp. v. BNCCORP, Inc.*,
   2016 WL 3365428 (M.D.N.C. 2016) ............................................................17

*Bosley Med. Inst., Inc. v. Kremer*,
   403 F.3d 672 (9th Cir. 2005) ..............................................................15, 24

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ............................................................13, 14

*Cairns v. Franklin Mint Co.*,
   107 F. Supp. 2d 1212 (C.D. Cal. 2000)..........................................................16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................7

*Collins v. United States VA*,
   2020 U.S. Dist. LEXIS 199895 (S.D. Cal. Oct. 27, 2020)..........................13

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ............................................................................7

*Credit One Corp. v. Credit One Fin., Inc.*,
   661 F. Supp. 2d 1134 (C.D. Cal. 2009)....................................................2, 15

*DaimlerChrysler v. The Net Inc.*,
   388 F.3d 201 (6th Cir. 2004) ..........................................................................24

*Delta V Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*,
    402 F. Supp. 3d 902 (C.D. Cal. 2019) ......................................................2, 15

*DSPT Int'l, Inc. v. Nahum*,
    624 F.3d 1213 (9th Cir. 2010) ........................................................25

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ........................................................8

*Equinox Hotel Mgmt. v. Equinox Holdings, Inc.*,
    2018 U.S. Dist. LEXIS 16914, 2018 WL 659105
    (N.D. Cal. Feb. 1, 2018) ........................................................24

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ........................................................11

*Golden Eye Media United States, Inc. v. Trolley Bags UK, Ltd.*,
    525 F. Supp. 3d 1145 (S.D. Cal. 2021) ........................................................11

*GOLO, LLC v. Goli Nutrition Inc.*,
    2020 U.S. Dist. LEXIS 158508, 2020 WL 5203601
    (D. Del. Sep. 1, 2020)........................................................16

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ........................................................12, 13

*Groupion, LLC v. Groupon, Inc.*,
    859 F. Supp. 2d 1067 (N.D. Cal. 2012)........................................................11

*Icebreaker Ltd. v. Gilmar S.P.A.*,
    911 F. Supp. 2d 1099 (D. Or. 2012) ........................................................13

*In re Coors Brewing Company*,
    343 F.3d 1340 (Fed. Cir. 2003) ........................................................11

*Interstellar Starship Servs. v. Epix, Inc.*,
    304 F.3d 936 (9th Cir. 2002) ........................................................25

*Helix Envtl. Planning, Inc. v. Helix Envtl. & Strategic Sols.*,
    2020 U.S. Dist. LEXIS 88941 (S.D. Cal. May 20, 2020) ........................................................25

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*,
    407 F.3d 1027 (9th Cir. 2005) ........................................................22

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)........................................................24

*Lahoti v. VeriCheck, Inc.*,
    586 F.3d 1190  (9th Cir. 2009) ........................................................25

*Lang v. Ret. Living Publ'g Co.*,
    949 F.2d 576 (2d Cir. 1991) ........................................................15

*LegalForce RAPC Worldwide P.C. v. DeMassa*,
  2020 U.S. Dist. LEXIS 148021, 2020 WL 4747909
  (N.D. Cal. Aug. 17, 2020) ...............................................................23

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) .........................................................8

*Lewis v. Google Ltd. Liab. Co.*,
  2021 U.S. App. LEXIS 10782, 2021 WL 1423118
  (9th Cir. Apr. 15, 2021) ...................................................................22

*Lexmark Int'l, Inc v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .........................................................................22

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ............................................13, 18, 21

*M2 Software, Inc. v. Madacy Entm't*,
  421 F.3d 1073 (9th Cir. 2005) ............................................13, 14, 17

*Matrix Motor Co. v. Toyota Jidoshas Kabushiki Kaisha*,
  290 F. Supp. 2d 1083 (C.D. Cal. 2003) .....................................7, 10

*Mitcheson v. El Antro LLC*,
  2020 U.S. Dist. LEXIS 226473, 2020 WL 7075239
  (D. Ariz. Dec. 3, 2020) ....................................................................22

*Murray v. Cable National Broadcasting Co.*,
  86 F.3d 858 (9th Cir. 1996) ...............................................................8

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ...........................................................7

*New Milani Grp., Inc. v. J.T. Bella, LLC*,
  2013 WL 12116579 (C.D. Cal. Jul. 22, 2013) ...............................10,

*Pom Wonderful Ltd. Liab. Co. v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ...........................................................8

*Razor USA LLC v. Vizio, Inc.*,
  2015 WL 12656941, at *5 (C.D. Cal. 2015) ...................................19

*Rearden LLC v. Rearden Commerce, Inc.*,
  683 F.3d 1190 (9th Cir. 2012) ...........................................................8

*Reeves v. Gen. Nutrition Ctrs., Inc.*,
  2012 U.S. Dist. LEXIS 200682, (C.D. Cal. Apr. 2, 2012) ............8, 9

*Robinson v. Hunger Free America, Inc.*,
  2018 U.S. Dist. LEXIS 41256, 2018 WL 1305722
  (E.D. Cal. Mar. 13, 2018) ......................................................9, 11, 12

*Romag Fasteners, Inc v. Fossil, Inc.*,
  140 S. Ct. 1492 (2020) ................................................................19, 20

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,*
680 F. Supp. 2d 1107  (N.D. Cal. 2010)........................................................15

*Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd.,*
393 F.3d 1238 (Fed. Cir. 2004) .....................................................................8

*Skydive Arizona, Inc. v. Quattrocchi,*
673 F.3d 1105 (9th Cir. 2012) .....................................................................22

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997) .....................................................................23

*Spin Master, Ltd. v. Zobmondo Enter., LLC,*
944 F. Supp. 2d 830 (C.D. Cal. 2012)....................................................18, 21

*Stonefire Grill, Inc. v. FGF Brands, Inc.,*
987 F. Supp. 2d 1023 (C.D. Cal. 2013)..............................................7, 10, 11

*Sunearth, Inc. v. Sun Earth Solar Power Co.,*
839 F.3d 1179 (9th Cir. 2016) .....................................................................13

*Synergistic Int'l, LLC v. Korman,*
470 F.3d 162, 175 (4th Cir. 2006) ...............................................................20

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,*
610 F.3d 1171 (9th Cir. 2010) .......................................................................7

*Vinh-Sanh Trading Corp. v. SRTC, Inc.,*
2021 U.S. Dist. LEXIS 134236, 2021 WL 3037706
(N.D. Cal. July 19, 2021)..............................................................................22

*Virtual Works, Inc. v. Volkswagen of Am., Inc.,*
238 F.3d 264 (4th Cir. 2001) .......................................................................25

*Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC,*
2019 U.S. Dist. LEXIS 140525, 2019 WL 3934468
(M.D. Fla. Aug. 20, 2019) ...........................................................................23

**RULES**

FED. R. CIV. P.
56       ........................................................................................................ 7

**STATUTES**

15 U.S.C. § 1125
§ 1117(a).......................................................................................................21
§ 1125 (a)(1)(B).............................................................................................22
§ 1125 (d)(1)(B)(i).........................................................................................25
§ 1125 (d)(1)(B)(ii)........................................................................................25

Cal. Bus. & Prof. Code
§ 17500 ...................................................................................................23, 24

§ 17535 ..................................................................................................23

## **OTHER**

Thomas McCarthy on Trademarks and Unfair Competition (5th ed.)
§ 23.6 ........................................................................................15

Defendants Telebrands Corp., Hempvana, LLC, Bulbhead.com, LLC and Healthbloom, LLC (collectively "Defendant" or "Telebrands") submits the following memorandum in support of its motion for summary judgment as to Plaintiff Healthvana Inc.'s ("Plaintiff") complaint.

**INTRODUCTION**

Plaintiff is a technology company that sells a cloud-based "software as a service" solution under the name "Healthvana" to healthcare firms, clinics and governmental entities to communicate STD and COVID-19 test results to patients through an online portal.  The Pandemic has been very good to Plaintiff, as ███████████████ ███████████████████████████████████████████████████ ████████████████████.

Telebrands[1], by contrast, is not a technology company.  It is a consumer products company that sells household products directly to consumers through television advertising, the internet, and in "big box" retail stores.  From March 15 – April 4, 2020 – a period of 20 days – Telebrands advertised a hand sanitizer bearing the name "Healthväna Hydroclean."  On March 31, 2020, based on an agreement with Plaintiff, Telebrands changed the name to "Handväna Hydroclean," and thereafter marketed and sold the sanitizer under that name.[2]  After Telebrands made all of those changes, Plaintiff did an "about face" on its agreement with Telebrands, and filed the instant suit.

Despite Plaintiff's attempt to manufacture a trademark infringement case out of whole cloth, it is clear that that there is no infringement here.  Specifically, the technology services offered by Plaintiff, on the one hand, and the hand sanitizer sold by Telebrands, on the other, are completely unrelated, and, as such, Plaintiff cannot meet the necessary threshold showing to state an actionable claim of trademark infringement under this

---

[1]   The other corporate defendants have nothing to do with the hand sanitizer product at issue.  *See* Statement of Undisputed Facts ("SUF") at 31.

[2]   Approximately 90% of hand sanitizer was sold with the name "Handväna Hydroclean" (which Plaintiff's CEO, Ramin Bastani, testified did not infringe the "Healthvana" mark).  SUF at 58.

1   Court's decision in *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161,

2   1166 (C.D. Cal. 1998).  And, even assuming Plaintiff could meet the threshold showing

3   of related goods/services (which it cannot), 7 of the 8 factors set forth in *AMF Inc. v.*

4   *Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part by Mattel, Inc.*

5   *v. Walking Mountain Prods.,* 353 F.3d 792 (9th Cir. 2003)) overwhelmingly favor

6   Telebrands.[3]

7        With respect to Plaintiff's remaining claims for false advertising and anti-

8   cybersquatting, Telebrands is entitled to summary judgment on those claims as well.

9   Plaintiff cannot establish standing under either the Lanham Act or Bus. & Prof. Code

10  section 17500. Likewise, the undisputed facts are clear that Plaintiff cannot show that it

11  is within the "zone of interests" for purposes of the Lanham Act or the injury/reliance

12  requirements under Bus. & Prof. Code section 17500. As to the cybersquatting claim, the

13  undisputed facts make clear that Plaintiff cannot make the required showing that

14  Telebrands acted in "bad faith" to profit or otherwise divert customers from Plaintiff.

15       For those reasons, Plaintiff's claims should be dismissed with prejudice.

16       And, even if there was any actionable infringement, the undisputed facts show that

17  it was not willful or purposeful, in any way, and that Plaintiff, by its own admission,

18  suffered absolutely no damages.  Indeed, Telebrands changed the name of its hand

19  sanitizer product, pulled its advertising, and changed the website at the request of

20  Plaintiff, doing so expeditiously in a matter of weeks at the outset of the Pandemic, with

21  the understanding (from Plaintiff) that doing-so would avoid unnecessary litigation.

22

23  [3]   Telebrands anticipates that Plaintiff will argue that there is actionable confusion

24  because Plaintiff received a number of administrative inquiries related to Telebrands'
    hand sanitizer in the few months after Telebrands began selling that product.  Of course,

25  to the extent that these communications are admissible, they are not indicative of
    "reasonable" confusion. *See Credit One Corp. v. Credit One Fin., Inc*., 661 F. Supp. 2d

26  1134, 1139-40 (C.D. Cal. 2009).  Moreover, when viewed for what they are, these
    inquiries are best described as "stand-alone enquiries and misdirected communications"

27  and do not create any genuine issues of fact.  *Delta V Forensic Eng'g, Inc. v. Delta V*

28  *Biomechanics, Inc.*, 402 F. Supp. 3d 902, 911 (C.D. Cal. 2019).

1  Further, Plaintiff admits that it suffered no actual damages, and that its ▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮ following the alleged infringement. Under those circumstances,

3  even if there was incidental infringement, Plaintiff is not, as a matter of law, entitled to

4  an award of Telebrands' profits.

5  **I.     FACTUAL AND PROCEDURAL BACKGROUND**

6      **A.     Plaintiff Healthvana Inc., Its Marks and Its Goods and Services**

7          Based in Los Angeles, Plaintiff was previously known as Qpid, Inc. and until 2014,

8  did business under the name "Hula". SUF 1. At that time, Plaintiff marketed its "Hula"

9  app that allowed users upload their HIV/STD test results, as well as locate STD testing.

10  SUF 2. Founder and CEO Ramin Bastani testified that Hula focused on HIV/STD's,

11  because "I had an encounter with a girl… [and] I asked her if she had been tested and she

12  was offended by the question, slapped me in the face, walked out, and left… I thought

13  that could be a good use case." SUF 3. Plaintiff advertised that the Hula app will help

14  "get you lei'd". SUF 4. In May 2014, after it was alleged that the company's name was

15  racially insensitive, Plaintiff changed its name to "Healthvana". SUF 5.

16          **1.     Plaintiff's "Healthvana" mark**

17          Plaintiff's U.S. Federal Trademark Registration No. 4,857,628 for the term

18  "Healthvana" is in Classes 9 (computer software), 42 (Application Service Provider

19  featuring software), and 44 (healthcare consulting services). SUF at 6.

20          **2.     Plaintiff's Good and Services and the Target Market**

21          Plaintiff does not sell physical, consumer products under its Healthvana mark. SUF

22  at 7. Plaintiff sells a HIPPA-compliant, cloud-based, "software as a service" technology

23  platform that digitally delivers test results through a secure portal, including to patients'

24  mobile phones, through its website and applications. SUF 8. Plaintiff's target market of

25  paying customers include "providers" such as governmental entities, healthcare firms,

26  doctor's offices, and clinics. SUF at 9. Prior to the COVID-19 pandemic, Plaintiff

27  focused on the STD/HIV testing market. SUF at 11. Thereafter, in or about March 2020,

28  Plaintiff expanded to the COVID-19 test results market, and eventually, to COVID-19

vaccine records. SUF at 12.  Since then, Plaintiff's business ███████████
███████████████████████████████████████████████████████████
███████████████████████         SUF at 13.

Plaintiff has never sold a physical consumer or household products via a direct-response television commercial.  SUF at 14.  Plaintiff has never sold a physical consumer or household product to "big box" retailers like Home Depot and Lowes.  SUF 15.  And, Plaintiff has no intention to do so in the future.  *Id*.  Plaintiff has never aired a national television commercial.  SUF at 18.

**B.    Defendant Telebrands, the Healthväna Hand Sanitizer Products, and the Target Market**

For nearly 40 years, Telebrands has marketed and sold "As Seen on TV" consumer and household products directly to consumers and on the shelves of "big box" retailers.  SUF at 19.  The company has developed longstanding business relationships with those retailers, including Walmart, Home Depot, Lowes, CVS, and Walgreens, among others.  SUF 20.

One of Telebrands' recent products is its "Hempväna" line of wellness products (such as the popular the Hempväna pain relief cream) that are sold online and in certain retail stores.   SUF at 21.   Because of the millions of dollars that Telebrands spent promoting Hempväna, Telebrands desired to expand the "Hempväna" business to include different non hemp-based types of health and wellness products.  SUF at 22.  In early 2020, due to the Pandemic and a shortage of supply in the marketplace, Telebrands worked to formulate hand sanitizer gel and foam products under the name "Healthväna".  SUF at 23.  Telebrands chose that name because certain of the retailers it planned to sell the product to were, historically, hesitant to buy a product with the word "Hemp" in it.  SUF at 24.   The marketing and labeling of the sanitizer always used the term "Hydroclean" in conjunction with the term "Healthväna" and often used Telebrands' "Bulbhead" logo and/or branding as well.  SUF at 53 .  As an alternative to alcohol-based sanitizers that can dry out the skin, the products were formulated with the germ-killing

ingredient, benzalkonium chloride and uniquely contained the moisturizing ingredients aloe vera, coconut oil, and Hyaluronic acid. SUF at 26.

Telebrands launched the products in March 2020 with a "direct response"-style television commercial and a product website.  SUF at 28.  The target market for the products were individual consumers as well as "big box" retailers.  SUF at 29.

### C.   Telebrands Voluntary Changes the Product Name, Commercial, Website, and Labeling

On March 28, 2020, Plaintiff contacted Telebrands to express concerns about the "Healthväna" sanitizer products based upon misdirected customer service communications Plaintiff had received.  SUF 32.  Although, Telebrands disagreed with Plaintiff that there was any trademark infringement or confusion, Telebrands voluntarily removed the "Healthväna" name and rebranded the products as "Handväna".  SUF at 35-36.  In addition to changing the name and labeling, Telebrands changed the marketing, television commercial, and website for the product.  SUF 35.  Telebrands memorialized the agreement with Plaintiff in a March 31, 2020 email between Bala Iyer, Telebrands COO, and Mr. Bastani.  *Id*.  The email stated:

- We have revised our commercial to remove any reference to Healthvana.
- The revised commercial will be trafficked to TV stations and we will request all networks to switch out the commercials ASAP. However, keep in mind that we have no control over the TV stations.
- We will be using a different trademark for our hand sanitizer product.
- The landing page/website for our Hydroclean product is being changed to a different URL. The new website should be live by tomorrow, April 1st.
- We are sending an order confirmation communication via email and or letters to all our customers informing them of our toll-free customer support number and our customer support email address.

SUF at 35-36.  In that same email, My Iyer stated, "Please understand that we agreed to

1   implement these changes expeditiously in the spirit of resolving this dispute without any
2   admission of liability. We disagree that there is any trademark infringement, and have
3   moved expeditiously so that you can continue the important and time sensitive work that
4   you are doing in the face of the COVID-19 pandemic." *Id.* On April 6, 2020, Mr. Bastani
5   acknowledged that the changes had been made and requested further consideration of his
6   prior demand of $2500 in legal fees to "quickly put this behind us". SUF at 37. On April
7   17, 2020, Mr. Iyer sent Mr. Bastani an email reiterating that the company had completed
8   the agreed changes, was beginning to ship products, and would agree pay Plaintiff $2500
9   in its legal fees. SUF 38.

10   No products bearing the name "Healthväna" were ever shipped directly to
11   consumers, as they were all changed to "Handväna" prior to shipment. And, of the several
12   million units shipped to big box retailers, only 300,000 bore the name "Healthväna" on
13   the label. SUF at 40-41.   All other units shipped to direct purchasers or third-party
14   retailers contained the rebranded "Handväna" name and labeling. SUF at 42.

15   **D.    Customer Inquiries Mis-directed to Plaintiff**

16   During the period April 2020 through June 2020, Plaintiff received a number of
17   administrative inquiries related to the Handväna sanitizer. SUF 43. Nearly all of them
18   came from individuals who purchased the product directly from Telebrands; none of
19   these were from any big box retail customer. SUF 44. The inquiries ostensibly ended in
20   June 2020, with just a handful more coming in July and August 2020. SUF 43. Over half
21   of them were directed to Plaintiff after Plaintiff insisted that Telebrands change the
22   address of its primary website and, as such, were almost "self-manufactured" by Plaintiff.
23   SUF 46.

24   During this time period, Plaintiff was also receiving customer service inquiries and
25   complaints from patients who utilized Plaintiff's software service. SUF at 47. According
26   to some of those complaints, Plaintiff's service failed to timely provide them with their
27   COVID-19 test results and, in at least one case, resulted in a complaint to the federal
28   government related to Plaintiff's shoddy service. SUF at 48. During this time period,

Plaintiff received "many more" inquiries and complaints about its own service than it did about the Telebrands hand sanitizer.  SUF at 49.

## II.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but rather is the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  Such is the case here.

## III.   SUMMARY JUDGMENT AS TO ALL TRADEMARK INFRINGEMENT-BASED CLAIMS IS WARRANTED.

To establish each of its trademark-based claims, Plaintiff must demonstrate (1) the ownership of a valid mark, and (2) Defendant's use of a confusingly similar mark that is likely to cause consumer confusion as to the origin or sponsorship of the parties' products. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (holding that "actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act").  "Actionable confusion for purposes of a trademark infringement analysis must be 'probable, not simply a possibility,'" *Matrix Motor Co. v. Toyota Jidoshas Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1090 (C.D. Cal. 2003), and it is adjudged assuming the actions of a "*reasonably prudent* consumer in the marketplace." *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1046 (C.D. Cal. 2013).  "Unreasonable, imprudent and inexperienced [shoppers in the relevant marketplace] are not relevant." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010).

In assessing likelihood of consumer confusion, courts in the Ninth Circuit consider

the so-called *Sleekcraft* factors.   However, prior to doing so, Plaintiff must make a threshold showing that the goods and services at issue are related.   *See Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161, 1163 (C.D. Cal. 1998).   If they are not, the Defendant is entitled to summary judgment as a matter of law.   *Id;  see also Murray v. Cable National Broadcasting Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (affirming dismissal of trademark infringement claim where services were found to be unrelated).

Here, Plaintiff cannot make that threshold showing.

**A.     No *Sleekcraft* Analysis Is Required, As The Products Are Not Related**

As this Court has recognized, the *Sleekcraft* analysis applies where goods are related.   *Bally Total Fitness,* 29 F. Supp. 2d at 1163. "If the goods are totally unrelated, there can be no infringement…." *Sleekcraft*, 599 F.2d at 348.

"Related goods (or services) are those 'which would be reasonably thought by the buying public to come from the same source if sold under the same mark.'" *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012) (quoting *Sleekcraft*, 599 F.2d at 348 n.10).   The relatedness of the parties' goods or services turns on whether they are (1) complementary, (2) sold to the same class of purchasers, or (3) are similar in use or function. *Sleekcraft*, at 350 (citations omitted).   Thus, courts have held that goods such as wine and cheese or cheese and salami, are related goods under this analysis. *See E. & J. Gallo Winery*, 967 F.2d at 1291. Likewise, fruit-juice beverages and fruit-flavored energy drinks are related.   *Pom Wonderful Ltd. Liab. Co. v. Hubbard,* 775 F.3d 1118, 1127 (9th Cir. 2014).

On the other hand, multiple courts have found that seemingly similar products were not related for purposes of trademark confusion. For instance, pants and shirts are not related goods.   *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1359-60 (9th Cir. 1985); *see also Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1245 (Fed. Cir. 2004) (finding that cooking classes and kitchen textiles are not related because "one is a service while the other is a tangible good"); *Reeves v. Gen. Nutrition Ctrs., Inc.*, No. SA CV10-01653 JAK (FFMx), 2012 U.S. Dist. LEXIS 200682, at *9 (C.D. Cal. Apr. 2, 2012)

(finding that, although generally in nutritional field, "50 GRAM SLAM" protein shakes not related to "GRAMSLAM" diet program and book).

In *Bally Total Fitness Holding Corp. v. Faber*, this Court, in granting summary judgment, found that a computer website and health club management services were so unrelated that no *Sleekcraft* analysis was necessary:

> The *Sleekcraft* factors apply to related goods. [citation]…The Court finds that the goods here are not related. Web page design is a service based on computer literacy and design skills. This service is far removed from the business of managing health clubs….[and] [n]o reasonable consumer comparing Bally's official web site with Faber's site would assume Faber's site "to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." Therefore, Bally's claim for trademark infringement fails as a matter of law.

29 F. Supp. 2d at 1163-1164.

Similarly, in *Robinson v. Hunger Free America, Inc*., the district court concluded that the plaintiff failed to allege facts showing a plausible likelihood of confusing with the defendant's use of "Hunger Free America." *Robinson*, 2018 U.S. Dist. LEXIS 41256, 2018 WL 1305722, at *4. The district court noted that the types of goods as well the consumer they targeted were dissimilar, and that have dissimilar uses and functions.  As such, the allegations did not demonstrate that a customer would likely be confused. *Id*.

Here, Plaintiff offers a cloud-based "software as a service" solution that communicates STD and COVID-19 test results to healthcare patients through an online portal.  That service is sold to healthcare firms, clinics and governmental entities.  In contrast, Telebrands offered a physical consumer product – a hand sanitizer – that is physically used to wash and sanitize an individual's hands.  That product is sold directly to individual consumers through a direct response television commercial and to big box retailers for purposes of re-sale to individual consumers.   Simply put, Plaintiff's technology services, on the one hand, and Telebrands' hand sanitizer product, on the other are not complementary, are light years apart in terms of functionality, and are marketed

to completely different categories of paying customers.  As such, no "reasonably prudent consumer" in the marketplace would think that they are related.  *See Stonefire Grill, Inc. v. FGF Brands, Inc*., 987 F. Supp. 2d 1023 (C.D. Cal. 2013).  In a word, they're not.

To the extent that Plaintiff argues that hand sanitizer and its medical test services fall within the general realm of "health" products, that argument does not defeat a finding that the products at issue are unrelated for purposes of trademark confusion.  "[T]he mere fact that two products or services fall within the same general field ... does not mean that the two products or services are sufficiently similar to create a likelihood of confusion." *Matrix Motor Co.,* 290 F. Supp. 2d at 1092.[4]

In sum, as a matter of law, the goods and services at issue are so unrelated that Plaintiff cannot make the necessary threshold showing required for a finding of trademark infringement.  *See Bally Total Fitness,* 29 F. Supp. 2d at 1163-1164.  For that reason, Plaintiff's infringement claims should be summarily dismissed as a matter of law.

### B.      Evaluation of the *Sleekcraft* Factors

Even if the Court were to evaluate the *Sleekcraft* factors, that evaluation, too, demonstrates that Plaintiff's claims should be summarily dismissed.

The *Sleekcraft* factors are: (1) strength of the mark; (2) proximity of the goods; (2) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d 341, 348-49.  Each of the factors falls in Telebrands' favor.

### 1.      The Parties' Marks Are Dissimilar

In assessing this factor, "what is critical is the overall appearance of the marks as used in the marketplace, not a deconstructionist view of the different components of the marks." *New Milani Grp., Inc. v. J.T. Bella, LLC*, 2013 WL 12116579, at *10 (C.D. Cal. Jul. 22, 2013). "Three general principles help determine whether the marks are similar.

---

[4]   Moreover, to the extent that average consumers do obtain test results via the Healthvana software, it is solely because their healthcare provider uses such services.

First, "[s]imilarity is best adjudged by appearance, sound, and meaning. Second, the marks must be considered in their entirety and as they appear in the marketplace. Third, similarities are weighed more heavily than differences." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1032 (9th Cir. 2010).

Accordingly, courts will find marks dissimilar though they share a common word or similar spelling. *See, e.g.*, *Stonefire Grill*, 987 F. Supp. 2d at 1051 ("Despite the presence of a common word, the Court finds that the marks, when viewed in their entirety and as they appear in the marketplace, are dissimilar."); *Groupion*, 859 F.Supp.2d at 1073 ("Despite the similarity in the spelling of the two words, the Court finds that the marks, when viewed in their entirety and as they appear in the marketplace, are dissimilar.").

Although "Healthvana" is obviously similar, when properly viewed as they appear in the marketplace, it is clear the parties' uses differ in several significant ways:

| **Plaintiff** | **Defendants** |
|:---:|:---:|
|  |  |

This factor favors Telebrands.  The marks have substantial differences in color, text and graphics, and Telebrands' use of Healthvana was largely used in connection with the terms "Hydroclean" and/or the "Bulbhead" logo. SUF at 51-53.   Moreover, Telebrands' mark  mirrors its popular "Hempväna" branding as a further indication of the products' source:  . SUF 54.

And, this fact further shows dissimilarity between the 2 marks.  *See Golden Eye Media United States, Inc. v. Trolley Bags UK, Ltd*., No. 3:18-cv-02109-BEN-LL, 2021 U.S. Dist. LEXIS 48161, at *123-24 (S.D. Cal. Mar. 12, 2021)("[t]he Ninth Circuit has held that use of a house mark or distinctive logo on packaging and advertising can reduce the likelihood of confusion."); *In re Coors Brewing Company*, 343 F.3d 1340, 1347 (Fed. Cir. 2003) (holding no likelihood of confusion between two BLUE MOON marks based, in part, on differences of the design element of the marks); *Robinson*, 2018 U.S. Dist.

LEXIS 41256, 2018 WL 1305722, at *4 (noting the marks were not similar as the plaintiff's "Hunger Free America" is in "green lettering with black and white outlining, below a background of farm rows and vegetables" while the defendant's "Hunger Free America" has a "red slash through the word Hunger."). Accordingly, this factor favors Telebrands.

### 2.    The Parties' Goods and Services Are Completely Different

As discussed above, the parties' goods and services are completely different.

### 3.    Plaintiff's Healthvana Mark is Weak Outside of Its Medical Testing Niche

In determining strength, courts evaluate both "conceptual strength and commercial strength." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Thus, even for fanciful and arbitrary marks, limited sales and advertising by the plaintiff could result in this factor favoring the defendant. *See Groupion*, 859 F. Supp. 2d at 1078 (finding that "regardless of where Groupion's mark falls on the conceptual spectrum," the "lack of Groupion's commercial strength in the United States … significantly undermines the strength of its mark").  Here, Plaintiff's mark has no commercial strength outside of its medical testing niche.  Plaintiff has admitted as much.  SUF at 11-12.   Prior to the COVID-19 pandemic, Healthvana operated in solely in the STD/HIV testing space, with very limited sales and very limited advertising expenditures.  SUF at 13, 17.   Thus, this factor favors Telebrands.

### 4.    The Parties Market And Sell Their Goods In Distinct Channels

The fourth factor of the *Sleekcraft* test—the parties' channels of commerce and marketing—weighs unequivocally and heavily in favor of Telebrands.

Telebrands sells its products through websites, 1-800 numbers and, primarily, in big box retail stores.  In contrast, Plaintiff sells its "software as a service" technology to governments, healthcare firms, and medical clinics. SUF at 9.   Unlike Telebrands, Plaintiff does not sell direct-to-consumer "As Seen On TV" household products, nor does it sell physical, household or wellness products in "big box" stores like Home Depot.

SUF at 7, 9, 15-16.  As such, no consumer will ever encounter the parties' products/service together in a purchasing context, making it all but impossible for a consumer to mistakenly buy one party's product (consumer hand sanitizer) when shopping for the other ("software as a service" to communicate HIV/COVID test results).

Here, it is obvious that the parties' respective target markets and channels of trade are wholly distinct.  As such, this factor favors Telebrands.

### 5.   No Intent to Deceive by Telebrands

This factor is generally of "minimal importance," *GoTo.com*, 202 F.3d at 1208, unless "it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)," *Brookfield*, 174 F.3d at 1059.

Mere knowledge of a plaintiff's mark is not proof of intent. *See Brookfield*, 174 F.3d at 1059 (emphasizing that intent is only relevant insofar as it demonstrates an intent to confuse consumers); *Stonefire Grill*, 987 F. Supp. 2d at 1055. *Collins v. United States VA*, No. 19-cv-00867-H-MSB, 2020 U.S. Dist. LEXIS 199895, at *24 (S.D. Cal. Oct. 27, 2020).  Thus, so-called "[w]illful infringement carries a connotation of deliberate intent to deceive." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *disapproved on other grounds by Sunearth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179 (9th Cir. 2016); *see also, e.g.*, *Icebreaker Ltd. v. Gilmar S.P.A.,* 911 F. Supp. 2d 1099, 1112 (D. Or. 2012) (granting summary judgment and finding no evidence of willfulness despite defendant's receipt of a cease-and-desist letter from plaintiff).

In *M2 Software, Inc. v. Madacy Entm't,* 421 F.3d 1073 (9th Cir. 2005), the defendant adopted its M2 ENTERTAINMENT mark for music and CD distribution even though it was aware of plaintiff's M2 SOFTWARE mark in the same field. 421 F.3d at 1084. Still, the Ninth Circuit found that the intent factor weighed in defendant's favor because "M2 Software failed to present evidence 'that would justify a trier of fact in concluding that [defendant], with 20 years of experience in the music industry and the

ability to produce almost 40,000 CDs in less time than M2 Software could sell 200 CDs, had any intention of capitalizing on M2 Software's trademark." *Id.* at 1085.

Here, there is no evidence that Telebrands sought to capitalize off any goodwill associated with Plaintiff. Telebrands launched the hand sanitizer under the "Healthväna" name because the product dealt with consumers' "health" and was an offshoot of its popular "Hempväna" line of products. SUF at 21-24. Defendants' use of "Healthvana" in the marketplace mirrors its "Hempväna" branding. SUF at 54. Even if Defendants were aware of Plaintiff, Telebrands independently arrived at the "Healthväna" name and the goods and services at issue are completely distinct and unrelated, from what was, at the time, a small, Los Angeles-based, technology service for delivery of STD tests. *See M2 Software, Inc.* at 1085 (finding no evidence of bad intent where alleged infringer had notice of similar mark but chose to proceed with independently-derived name in belief that use was non-infringing). As such, this factor, too, favors Telebrands.

### 6. The Sophistication of Plaintiff's Customers

Courts use the reasonably prudent consumer test to measure the degree of care consumers are likely to exercise. *See e.g. Brookfield*, 174 F.3d at 1060. Using the reasonably prudent consumer test, courts analyze the price of the product and the level of sophistication expected of a consumer buying the product. *Id*. When the product is expensive, a buyer can be expected to exercise greater care. *Sleekcraft*, 599 F.2d at 353.

As discussed, the parties have two completely different customer bases. Plaintiff sells its "software as a service" technology to governments, healthcare firms, and clinics. SUF at 9. These are sophisticated actors with detailed processes for purchasing services such as those sold by Plaintiff. In other words, Plaintiff's customers exercise a high degree of care. Moreover, Telebrands markets its products to everyday consumers as well as "big box" retailers, like Home Depot, Lowes, and Walmart. The "retail buyers" who purchase goods on behalf of those stores are highly sophisticated and have a decades-long experience with Telebrands. There is zero evidence that Lowes or Home Depot had any confusion that Plaintiff or Telebrands was the source of the hand sanitizer products. In

fact, the communications with those buyers make clear that they understood that Telebrands was the source of the hand sanitizer products at issue.  SUF 30.  Again, this factor favors Telebrands.

### 7. The Misdirected Customer Service Communications Do Not Demonstrate Actual Confusion

Relevant evidence of actual confusion must indicate confusion as to the source of a product or service and affect a purchasing decision. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("[T]rademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally." (quotation omitted) (emphasis in original).; *see also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:6 (5th ed. 2020)("[T]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.").

"Enquiry evidence" and "misdirected communications" are not evidence of actual consumer confusion.  *Delta V Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*, 402 F. Supp. 3d 902, 911 (C.D. Cal. 2019).  Plaintiff appears to base its entire case on its receipt of misdirected communications.  Setting aside whether these communications are admissible, they are, as this Court has previously held, not indicative of *reasonable* confusion, but rather are "instances of stand-alone enquiries and misdirected communications." *Id.*; *see also Credit One Corp. v. Credit One Fin., Inc*., 661 F. Supp. 2d 1134, 1139-40 (C.D. Cal. 2009) ("[T]elephone calls and Western Union payments apparently intended for Defendants are more properly characterized as 'misdirected communications' than evidence of actual confusion.").

For these reasons, courts routinely hold such evidence to be irrelevant under this factor. *See, e.g., id.; Lang v. Ret. Living Publ'g Co*., 949 F.2d 576, 582-83 (2d Cir. 1991) (four hundred misdirected phone calls were irrelevant because "no evidence links the confusion evinced by the calls to any potential or actual effect on consumers' purchasing decisions"); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107,

1121 (N.D. Cal. 2010) (evidence of "a few misplaced calls and a misdelivered package" did not cause this factor to weigh in favor of plaintiff).

Although Plaintiff has produced various communications it received about the hand sanitizer from March 2020 – August 2020, in light of the number of units sold of the Telebrands hand sanitizer products, it is clear that the small number of misdirected communications is minimal. *See, e.g., Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1219 (C.D. Cal. 2000)(finding that "[e]vidence that ten consumers were actually confused [was] minimal" because over 300,000 products had been sold during the relevant time period).  Further, the record evidence shows that sophisticated retail buyers for big box stores like Home Depot knew that the source of the hand sanitizer was Telebrands[5]. Unsurprisingly, a significant majority of these inquiries occurred after Telebrands began implementing the changes to the product name, advertising, and website in early April 2020 (changes that Plaintiff demanded, mind you)—and they all appear to have stopped in August 2020.  *See GOLO, LLC v. Goli Nutrition Inc.*, Civil Action No. 20-667-RGA, 2020 U.S. Dist. LEXIS 158508, at *24 (D. Del. Sep. 1, 2020)("'Ownership of a trademark does not guarantee total absence of confusion in the marketplace.'" (citation omitted)).

In *GOLO*,  the district court denied a motion for preliminary injunction where plaintiff argued its receipt of misdirected consumer communications demonstrated actual confusion.  In *GOLO*, Plaintiff indicated that it received 152 "emails, Facebook posts, messages via the GOLO online store, phone calls, and voicemails in which consumers contacted GOLO to inquire or complain about some aspect of Goli's product or consumer experience with Goli." *GOLO*, 2020 U.S. Dist. LEXIS 158508, at *22.  In addition, GOLO claimed that defendant Goli received at least 55 "instances of confusion, totaling

[5]    In reviewing documents produced, it appears that Plaintiff produced no misdirected communications from consumers that purchased the products in retail stores, as opposed to the initial television commercial; nor has it produced any such communication from a retailer. Thus, the other communications identified by Plaintiff are not indicative of actual confusion but rather are improperly directed customer service communications.

at least 210 instances of confusion in the record." *Id*.  But the communications, like those advanced by Plaintiff here, "do not involve any evidence of consumers buying [Goli's] gummies thinking they were GOLO's product or of consumers buying [GOLO's] diet plan and Release thinking it was Goli's product… Instead, the examples *generally involve the often careless complaining in which frustrated consumers are apt to engage, which, due to the internet, has never been easier*." *Id.* at \*22 n.12 (emphasis added). Viewing these submissions "in context, including in light of the large number of customers that Plaintiff has, and considering the relevant law," the court held that the communications were "isolated and idiosyncratic" and the "post-purchase actual confusion demonstration is not strong enough to weigh… for or against finding a likelihood of confusion." *Id.* at \*29.  That is precisely the case here.

In sum, the administrative inquiries advanced by Plaintiff do not evidence confusion affecting a purchasing decision; at most, they show that during the outset of the stress of the global COVID-19 pandemic, some of Telebrands' customers mistakenly thought Plaintiff's contact information was Telebrands' contact information.  *See BNC Bancorp. v. BNCCORP, Inc.*, 2016 WL 3365428, at \*7 (M.D.N.C. 2016) (misdirected communications showed "these individuals may have believed BNC National Bank's phone number, website, and Twitter handle belonged to Bank of North Carolina," but "no indication that they believed they were banking with BNC National Bank, rather than Bank of North Carolina").   Given the above, this factor is, at best for Plaintiff, neutral.

### 8. Likelihood of Expansion of Product Lines

Under this factor, a plaintiff must show a "strong possibility of [the defendant's]  expansion into competing markets" for this factor to favor infringement. *M2 Software*, 421 F.3d at 1085 (citation omitted). Plaintiff admits that it has no intention to expand into the consumer product arena.  SUF 15.  That admission, alone, is dispositive of this factor, and it favors Telebrands.

### 9. Summary of *Sleekcraft* Analysis

Here, based on the above, all factors tip in favor of Telebrands, with two being

neutral, at best, for Plaintiff.

### C.    Judgment Should be Entered As to Plaintiff's Trademark-based Causes of Action

Because Plaintiff's trademark infringement claim fails, judgment should be entered as to Plaintiff's remaining causes of action based on that claim.

## III.    TELEBRANDS IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUES OF DAMAGES AND PROFITS

 "The Ninth Circuit has recognized that claims for damages under the Lanham Act may be properly disposed of on summary judgment" and its "courts routinely grant[] summary judgment against plaintiff's request for disgorgement" of profits. *Am. Auto*., 367 F. Supp. 3d at 1102, 1105. Plaintiff is not entitled to damages or disgorgement of Telebrands' profits and the Court should  grant summary judgment.

For trademark infringement claims, "[a] plaintiff must prove both the fact and the amount of damage." *Lindy Pen Co., Inc. v. Bic Pen Corp*., 982 F.2d 1400, 1407 (9th Cir. 1993) (citing McCarthy § 30:27 (2d ed.)), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th Cir. 2016). "To establish damages in fact, a plaintiff must be able to point to a 'measurable loss' incurred as a result of the infringement." *Govino, LLC v. Goverre, Inc*., 2018 WL 7348849, at *6 (C.D. Cal. 2018) (quoting *Blau v. YMI Jeanswear, Inc*., 2004 WL 5313967, at *4 (C.D. Cal. 2004), aff'd, 129 F. App'x 385 (9th Cir. 2005)). This loss may be shown "by provable amount of...lost profits" by plaintiff or "by provable amount of the defendant's profits on a theory of unjust enrichment." *Id*. The latter theory "is based on the idea that the defendant diverted sales that would have gone to the plaintiff but for the infringement." *Spin Master, Ltd. v. Zobmondo Enter., LLC*, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012).

Here, Plaintiff advances no evidence of *any* measurable harm, it suffered from Telebrands' sale of hand sanitizer.  Other than complete speculation about its reputation, Plaintiff is unable to articulate one penny of provable lost sales it purportedly suffered due to Telebrands.  SUF at 55-56.  In fact, not only was Plaintiff's CEO unable to identify

any specific lost sales or accounts, he testified it would be "impossible" to know whether any other individual did not use Plaintiff's service due Telebrands sale of the hand sanitizer.  SUF 58.   Tellingly, Plaintiff's expert was only asked to analyze Telebrands' gross revenues, not any other calculation of harm. SUF at 60.

Because the parties are not competitors, Plaintiff must seek disgorgement of Telebrands' profits under an unjust enrichment theory.  "Under Ninth Circuit law, where a party seeks the profits of a trademark infringer, and the parties are not in direct competition with one another, then profits are a restitutionary remedy." *Razor USA LLC v. Vizio, Inc.*, 2015 WL 12656941, at *5 (C.D. Cal. 2015).   Disgorgement of profits is generally an appropriate remedy only where the defendant engaged in intentional wrongdoing. *Airhawk Int'l, LLC v. Ontel Prods. Corp.*, No. 18-cv-00073-MMA-AGS, 2020 WL 2306440, at *5 (S.D. Cal. May 8, 2020).   Although willfulness is no longer a requirement for an award of profits following the Supreme Court's decision in *Romag Fasteners, Inc v. Fossil, Inc.*, "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.,* 140 S. Ct. 1492, 1497 (2020) [6]. "[I]t is a principle long reflected in equity practice where district courts have often considered a defendant's mental state, among other factors, when exercising their discretion in choosing a fitting remedy." *Id*.  Therefore, pre-*Romag* Ninth Circuit law remains instructive where it weighs mental state on whether there should be any award of disgorgement of profits.

In *Airhawk Int'l, LLC v. Ontel Prods. Corp* the district court applied *Romag* in denying a motion for reconsideration of summary judgment of no disgorgement. *Airhawk*, 2020 WL 2306440, at *1. Exercising its "discretionary and equitable authority" on disgorgement of profits as instructed by *Romag*, the court weighed the defendant's mental

---

[6]   Previously,  in the Ninth Circuit, an award of profits as a restitutionary remedy required that the defendant "'willfully calculated to exploit the advantage of an established mark[.]'" *AAA of N. Cal. v. GM LLC*, 367 F. Supp. 3d 1072, 1102 (N.D. Cal. 2019) (quoting *Lindy Pen*, 982 F.2d at 1405-06).

1  state as "a highly important consideration." *Id*. at *4. The court found it "especially

2  appropriate" to consider willfulness because the plaintiff's damages theory was "as a

3  restitutionary measure of damages." *Id*. at *5. But as the *Airhawk* court stated, plaintiffs

4  "seek disgorgement of profits not necessarily to be made whole, but to prevent the

5  defendant from retaining gains made possible by its wrongdoing." *Id.* (citation omitted).

6  The *Airhawk* court thus denied reconsideration, finding that its pre-*Romag* grant of

7  summary judgment remained correct when applying the post-*Romag* framework. *Id*.

8      Here, Plaintiff advances no evidence of *any* measurable harm it suffered from

9  Telebrands' sale of hand sanitizer.  Other than complete speculation about harm to its

10  reputation, Plaintiff is unable to articulate one penny of provable lost sales it purportedly

11  suffered due to Telebrands.  SUF at 55-57.  In fact, not only was Plaintiff's CEO unable

12  to identify any specific lost sales or accounts, he testified it would be "impossible" to

13  know whether any other individual did not use Plaintiff's service due Telebrands sale of

14  the hand sanitizer.  *Id.* Plaintiff's own expert was only asked to add up Telebrands' gross

15  revenues, not generate any other calculation of harm. SUF at 60.    In short, in seeking

16  restitutionary disgorgement, Plaintiff intends to punish Telebrands and obtain a windfall,

17  not recover compensation, which is inconsistent with the law.

18      Moreover, the record shows no willfulness or bad faith on the part of Telebrands

19  to somehow trade on Plaintiff's name in marketing the hand sanitizer.  In fact, within days

20  after being contacted by Plaintiff, Telebrands agreed to voluntarily change the name of

21  the product and stop using the name "Healthvana".   In assessing whether restitutionary

22  disgorgement is appropriate, some courts consider other equitable factors, including: (1)

23  whether the defendant had the intent to confuse or deceive, (2) whether sales have been

24  diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff

25  in asserting his rights, (5) the public interest in making the misconduct unprofitable, and

26  (6) whether it is a case of palming off. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162,

27  175 (4th Cir. 2006) (noting factors also apply in Third and Fifth Circuits) (quotation

28  omitted); *see also 4 Pillar Dynasty LLC v. N.Y. & Co*., 933 F.3d 202, 214 (2d Cir. 2019)

(identifying similar factors).  As described above, the undisputed facts confirm that none of these equitable factors are present.   No sales were diverted to Telebrands that would have gone to Plaintiff (it doesn't sell consumer products like hand sanitizer); nor is there an allegation of palming off (i.e. Telebrands passing the hand sanitizer off as Plaintiff's). Nor can there be any genuine dispute that Telebrands ever intended to confuse or deceive the public.  Frankly, it would be ludicrous that Telebrands (a major consumer products company) would scheme to exploit any goodwill of a relatively obscure California technology company, who, until March 2020, focused on the HIV/STD test delivery business. *See Lindy Pen*, 982 F.2d at 1406-07 (defendant's "major position in the pen industry makes it clear that it was not trading on [plaintiff's] relatively obscure name").

Here, there is no evidence that Telebrands intended to trade on the Plaintiff's established name, and, as such, Plaintiff cannot, as a matter of law, recover Telebrands' profits.  *See Spin Master*, 944 F. Supp. 2d at 849 (holding that disgorgement was inappropriate as a matter of law even when the defendant willfully blocked the plaintiff's expansion in the market because there was no evidence that the defendant traded on the plaintiff's name). Likewise, without ill-gotten gains, an award of profits would be a punishment rather than compensation, which is contrary to the purposes of the remedy. 15 U.S.C. § 1117(a) (profits "shall constitute compensation and not a penalty"). For those reasons, the Court should, at a minimum, enter an Order granting summary judgment to Telebrands on Plaintiff's profits and/or damages claim.

## IV.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S FALSE ADVERTISING CLAIMS

### A.   Lanham Act

A false advertising claim under the Lanham Act has five elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter

interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B)).

It is settled that the Lanham Act allows suits only by "plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The statute includes a statement of its purposes as to "regulate commerce within the control of Congress by making actionable the deceptive and misleading use of mark" and to "protect persons engaged in such commerce against unfair competition," 15 U.S.C. § 1127; *Lexmark Int'l, Inc.*, 572 U.S. at 131-32.

So, "[t]o come within the zone of interests [in a Lanham Act false advertising claim], a plaintiff [must] allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l*, 572 U.S. at 131-32; *Vinh-Sanh Trading Corp. v. SRTC, Inc.*, No. 19-cv-04315-CRB, 2021 U.S. Dist. LEXIS 134236, at *22 (N.D. Cal. July 19, 2021). Courts within the Ninth Circuit[7] that have applied *Lexmark* affirm the "understanding that false advertising must allege a harm related to the plaintiff's success in the market, not just between the parties." *Mitcheson*, 2020 U.S. Dist. LEXIS 226473, 2020 WL 7075239 at *16. Said differently, a plaintiff must show that the injury plaintiff suffered is "harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

Plaintiff makes no such claim, as the Parties do not compete. *See* Section III(B)(4), above. Indeed, Plaintiff has admitted as much. SUF 15.

Moreover, even if the Court found Plaintiff's alleged injury falls within the zone of

---

[7] Post-*Lexmark*, a plaintiff must still show commercial competition with a defendant. *See, e.g., Lewis v. Google Ltd. Liab. Co.,* No. 20-16073, 2021 U.S. App. LEXIS 10782, at *4 (9th Cir. Apr. 15, 2021)(affirming dismissal of Lanham Act false adverting claim because Plaintiff "asserted claims as a consumer on the Google platform and not as a competitor with a commercial interest in reputation or sales.").

interests of the Lanham Act's protections, Plaintiff cannot not establish causation. To do so, Plaintiff must show that it "has been or is likely to be injured *as a result of the false statement*." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (emphasis added). In other words, causation "requires that the false advertising proximately cause the claimed injury." *Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No. 6:18-cv-02171-GAP-DCI, 2019 U.S. Dist. LEXIS 140525, 2019 WL 3934468, at *4 (M.D. Fla. Aug. 20, 2019) (alteration in original) A plaintiff "cannot obtain relief without *evidence* of injury proximately caused by [defendant's] alleged misrepresentations." *Lexmark Int'l, Inc.* at 140 (emphasis in original).

Here, Plaintiff can point to no evidence that the challenged claims which appeared for a brief time period on the www.healthvanafoam.com website, including the "trusted brand since 2015", the "over 100 million satisfied customers", and the "ingredient used in hospitals" claims caused Plaintiff to be injured. Again, Plaintiff has admitted as such and, beyond that, Plaintiff's ███████████████ Telebrands made those claims. Simply put, Telebrands did not injure Plaintiff, at all. Accordingly, Plaintiff's Lanham Act claim fails as a matter of law.

## B. Cal. Bus. Prof. Code § 17500

Under § 17500, it is unlawful for a person to "make or disseminate . . . any statement, concerning . . . [his] services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *See* Cal. Bus. & Prof. Code § 17500. A plaintiff may bring a § 17500 claim only if it "has lost money or property as a result of a violation of [§ 17500]." *See* Cal. Bus. & Prof. Code § 17535; *LegalForce RAPC Worldwide P.C. v. DeMassa*, No. 18-cv-00043-MMC, 2020 U.S. Dist. LEXIS 148021, at *15 (N.D. Cal. Aug. 17, 2020).

The California Supreme Court, has held a plaintiff bringing a claim [under §17500] is required to "demonstrate actual reliance on the allegedly deceptive or misleading

statements" in the same manner as is required for a §17200 claim based on misrepresentation. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 and n.9 (2011) (citing *In re Tobacco Cases II*, 46 Cal. 4th 298 (2009)).  Although the California Supreme Court considered this issue in the context of a claim in which the plaintiff was a consumer,  the majority of district courts that have addressed the issue have held such reasoning applies to cases filed by competitors. *See, e.g., Equinox Hotel Management, Inc.*, 2018 U.S. Dist. LEXIS 16914, 2018 WL 659105, at *15 (citing cases); *A White & Yellow Cab, Inc. v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 49803, 2017 WL 1208384, *7-9 (N.D. Cal. March 31, 2017) (finding no basis to limit California Supreme Court's reliance requirement to cases brought by consumers).

It is undisputed that the parties are not competitors and that Plaintiff never relied on any of the challenged statements on the www.healthvanafoam.com website cited in its complaint. SUF at 59.  Put simply, Plaintiff lacks standing to bring this claim under the express language of the statue and the reasoning of the majority of district courts in this Circuit. *See 23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018).  Accordingly, Defendants are entitled to judgment on the section 17500 claim.

## V.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S ACPA CLAIM

"[C]ybersquatting occurs when a person other than the trademark holder registers the domain name of a well-known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer* 403 F.3d 672, 680 (9th Cir. 2005) (quoting *DaimlerChrysler v. The Net Inc*., 388 F.3d 201, 204 (6th Cir. 2004) (internal quotation marks omitted)). The Anti-Cybersquatting Consumer Protection Act ("ACPA") establishes civil liability where a plaintiff proves that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'"

1   *DSPT Int'l, Inc. v. Nahum,* 624 F.3d 1213, 1218 (9th Cir. 2010).

2       The statute contains a safe harbor provision, excluding a finding of "bad faith

3   intent" for persons who reasonably believed that use of the domain name was fair use or

4   otherwise lawful. 15 U.S.C. § 1125(d)(1)(B)(ii). *Helix Envtl. Planning, Inc. v. Helix Envtl.*

5   *& Strategic Sols.*, No. 3:18-cv-2000-AJB-AHG, 2020 U.S. Dist. LEXIS 88941, at *22

6   (S.D. Cal. May 20, 2020). Congress has enumerated nine nonexclusive factors for courts

7   to consider in determining whether bad faith exists. *See* 15 U.S.C. § 1125(d)(1)(B)(i).

8   "[Courts] need not, however, march through the nine factors seriatim because the ACPA

9   itself notes that use of the listed criteria is permissive." *Lahoti v. VeriCheck, Inc.*, 586

10  F.3d 1190, 1202 (9th Cir. 2009) (quoting *Virtual Works, Inc. v. Volkswagen of Am., Inc.*,

11  238 F.3d 264, 269 (4th Cir. 2001)). "[I]nstead, the most important grounds for finding

12  bad faith are the unique circumstances of the case. . . ." *Interstellar Starship Servs. v.*

13  *Epix, Inc.,* 304 F.3d 936, 946 (9th Cir. 2002).

14      Here, in analyzing the 1125(d)(1)(B)(i) factors and the circumstances of the case,

15  plaintiff cannot show bad faith. First, Telebrands changed the name of the products to

16  Handväna and voluntarily disabled the www.healthvanafoam.com website, changing it to

17  www.handvanafoam.com. SUF at 35-37. Second, there was no intent by Defendants to

18  divert customers from Plaintiff, nor did Defendants offer to transfer, sell, or otherwise

19  assign the domain name to Plaintiff or a third party. *Id*. Last, Defendants independently-

20  derived name Healthväna (which was intended to be an expansion of its Hempväna brand)

21  and chose to proceed in the good faith belief that its use of was non-infringing after

22  consulting with outside counsel. There was no intent to profit off any goodwill associated

23  with Plaintiff's use of "Healthvana" in the software market for STD/HIV test results

24  delivery. Accordingly, judgment should be entered as to Plaintiff's ACPA claim.

25  **CONCLUSION**

26      For the reasons set forth above, the Court should grant Telebrands' motion for

27  summary judgment in its entirety and enter judgment in favor of Telebrands.

28

1  DATED: January 10, 2022          EPSTEIN DRANGEL LLP

2                                   By:    _s/ Peter J. Farnese_____
                                          Peter J. Farnese
3
                                    Attorneys for Defendants,
4                                   Telebrands Corp., Hempvana, LLC,
                                    Bulbhead.Com, LLC, and Health Bloom, LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2022, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the email addresses registered in the CM/ECF system.

DATED: January 10, 2022          By:     s/ Peter J. Farnese
                                         Peter J. Farnese