O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HEALTHVANA, INC., | ) | Case No. CV 20-04305 DDP (SKx) |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | ) | |
| TELEBRANDS CORP., | ) | |
| | ) | [Dkt. 70] |
| Defendants. | ) | |

Presently before the court is a Motion for Summary Judgment filed by Defendants Telebrands Corp.; Hempvana, LLC; Bulbhead.com, LLC; and Healthbloom, LLC (collectively, "Telebrands"). Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

Since 2014, Plaintiff Healthvana, Inc. ("Healthvana") has operated a "digital health platform" named Healthvana ("the Healthvana app"). Healthvana holds a trademark in the name "Healthvana" for use in connection with software and software as a service. Prior to 2020, the Healthvana app focused on delivering the results of HIV tests, and tests for other sexually transmitted diseases, to patients. With the onset of the COVID-19 pandemic in

March 2020, however, Healthvana shifted the focus of its digital platform to Covid test records, and later vaccination records. At all times, Healthvana's customers have not included end users of software or the Healthvana app, but rather governmental entities, healthcare firms, medical officers, laboratories, and employers.

Telebrands markets and sells "As Seen on TV" consumer household products via websites, phone numbers, and big box retailers such as Home Depot, Lowes, and Walgreens. Among Telebrands' products is a line of "Hempvana" products. Upon the outset of the pandemic, Telebrands made an effort to market and sell a hand sanitizer product. Because, however, retailers were historically reluctant to carry products associated with hemp, Telebrands opted to market a hand sanitizer under the name "Healthvana." Telebrands' marketing efforts initially included a "direct response" television commercial and a product website, and later expanded to big box stores.

In late March 2020, Healthvana contacted Telebrands to express concerns about Telebrands' use of the name "Healthvana." Telebrands' counsel indicated that Telebrands would rebrand the hand sanitizer as "Handvana" and change all "Healthvana" hand sanitizer marketing. Telebrands did not admit to any wrongdoing. By April 17, Telebrands represented that all changes had been made. Several hundred thousand bottles of hand sanitizer, however, had already been produced with the older, "Healthvana" label. Those bottles were filled and shipped to big box customers sometime after April 17. Once those pre-printed bottles had run out, subsequent shipments of hand sanitizer were delivered in the new "Handvana" bottles.

On May 12, 2020, Healthvana filed the instant suit. The Complaint alleges causes of action for trademark infringement, unfair competition, and false advertising in violation of both federal and state law, as well as a cause of action for violation of the AntiCybersquatting Consumer Protection Act ("ACPA"). Telebrands now moves for summary judgment on all claims.

## II. Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the

3

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

    A. Trademark claims

The "core element" of a trademark infringement claim is the likelihood that the similarity of the marks will confuse consumers as to the source of goods or services. Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007). Relevant factors include the strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, the degree of care likely to be exercised by consumers, the defendant's

4

intent, and likelihood of expansion of product lines. <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 941, 348-49 (9th Cir. 1979).

As an initial matter, Telebrands appears to suggest that a <u>Sleekcraft</u>, or likelihood of confusion, analysis is not applicable in the first instance unless the goods at issue are "related." The Ninth Circuit has explained that the purpose of a <u>Sleekcraft</u> analysis is to determine "whether consumers would likely be confused <u>by related goods</u>." <u>Network Automation, Inc. v. Advanced Sys. Concepts, Inc.</u>, 638 F.3d 1137, 1145 (9th Cir. 2011) (emphasis added); <u>see also</u> <u>M2 Software, Inc. v. Madacy Ent.</u>, 421 F.3d 1073, 1080 (9th Cir. 2005) (describing <u>Sleekcraft</u> analysis' role in determining "whether there is a likelihood of confusion between the parties' <u>allegedly related goods</u>") (emphasis added). Thus, the argument appears to go, where goods are not related, a <u>Sleekcraft</u> analysis is neither necessary nor informative. This Court has, more than twenty years ago, applied a "relatedness" test as a threshold question in this sense.[1] <u>See Bally Total Fitness Holding Corp. v. Faber</u>, 29 F. Supp. 2d 1161, 1163 (C.D. Cal. 1998). The majority of courts, however, including several of the authorities cited by Telebrands, have since treated relatedness of goods not as an independent, predicate factor, but rather as a part of the <u>Sleekcraft</u> analysis, specifically as part of the analysis related to the "proximity" of the goods. <u>See</u>, <u>e.g.</u>, <u>Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625, 633 (9th Cir. 2005); <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1147 (9th Cir. 2002); <u>Matrix</u>

---

[1] This Court went on, however, to assume for the sake of argument that the goods in question were related and conduct a full <u>Sleekcraft</u> analysis.

5

1  Motor Co. v. Toyota Jidosha Kabushiki Kaisha, 290 F. Supp. 2d 1083,
2  1090 (C.D. Cal. 2003).  The court finds that this approach is
3  appropriate, and looks to relatedness as part of the overall
4  confusion analysis.
5     1.   Strength of Plaintiff's Mark
6     "The purpose of examining the strength of the plaintiff's mark
7  is to determine the scope of trademark protection to which the mark
8  is entitled." Surfvivor, 406 F.3d at 631.  Here, the term
9  "Healthvana" is fanciful or perhaps suggestive, insofar as the term
10 evokes something that is somewhat health-related.  In either case,
11 the mark merits some degree of protection.  Id.
12     2.   Proximity/Relatedness of the Goods
13    As explained above, relatedness of the goods in question is
14 but one of the factors relevant to likelihood of confusion.
15 Healthvana's software product, however, bears little resemblance to
16 Telebrands' hand sanitizer.  Healthvana contends, correctly, that
17 goods need not directly compete with one another to qualify as
18 "related."  Products and services related to a general industry
19 may, in some cases, be related to each other, insofar as consumers
20 are likely to associate one party's products with the other party.
21 See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d
22 1036, 1056 (9th Cir. 1999).  In Brookfield, for example, the
23 plaintiff marketed "MovieBuff" software containing entertainment
24 industry-related software.  Id. at 1042.  The defendant, a
25 nationwide video chain, then, in the relatively early days of
26 internet marketing, registered the web domain moviebuff.com.  The
27 Ninth Circuit found the two goods related, in that "both companies
28 offer products and services relating to the entertainment industry

generally, and their principal lines of business both relate to movies specifically." Id. at 1056. The court came to the opposite conclusion, however, in Entrepreneur Media. There, the owners of Entrepreneur magazine brought trademark infringement claims against a public relations firm called "EntrepreneurPR," which also published a quarterly "Entrepreneur Illustrated" press release. Entrepreneur Media, 279 F.3d at 1138-39. The court concluded that "the fact that both parties' goods relate generally to entrepreneurs . . . can carry relatively little weight in determining the likelihood of confusion. This is so because any individual or company using the word 'entrepreneur' . . . is likely to do so because that product or service has something to do with the world of entrepreneurs." Id. at 1147.

Here, although the term "Healthvana" is less descriptive than "entrepreneur," any entity using any variation on the word "health" is likely to do so because its product has something to do with "health." As in Entrepreneur Media, therefore, the fact that both parties' products relate to the same, very general industry is of little moment. Furthermore, the universe of health-related products and services is far broader than that related to, for example, movies, as was pertinent in Brookfield. In apparent recognition of this reality, Healthvana suggests that the relevant universe is not health products generally, but rather Covid-related products specifically.[2] This argument is not persuasive. First,

---

[2] Healthvana is not entirely consistent, however, focusing on both parties' specific Covid-related products while also recognizing that "both companies offer products and services relating to medical issues generally." (Opp. at 14-15.) Indeed, for most of its history under the name Healthvana, Plaintiff's

(continued...)

7

Healthvana's effort to paint Telebrands' product as "Covid hand sanitizer" (Opposition at 2:8) is not supported in the record. Although the pandemic undoubtedly played a role in Telebrands' decision to expand into the sanitizer market, the sanitizer indisputably has applications beyond the world of Covid. Telebrands' television advertisement does not use the word "Covid," and Healthvana does not point to any other evidence of Covid-specific marketing in the record. Second, even if Telebrands had focused on the Covid-related market, the court is skeptical that Healthvana's phone app software would necessarily be "related to" every other product in the universe of arguably Covid-related products, including hand wipes, cleaning solutions, masks, gloves, face shields, prescription medicines, vaccines, pulse oximeters, UV-sanitizers, thermometers, and so on. For purposes of a <u>Sleekcraft</u> analysis, therefore, Healthvana's phone app is not closely related to Telebrands' moisturizing hand sanitizer.

   3.   Similarity of the Marks

"Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion." <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1206 (9th Cir. 2000). The marks at issue here are displayed below:



---

[2](...continued)
"digital health platform" focused on the prevention and management of HIV and sexually transmitted diseases.

1 Clearly, the spelling of the two marks is identical, with the
2 exception of an umlaut in Telebrands' mark.  Marks should, however,
3 "be considered in their entirety and as they appear in the
4 marketplace." Entrepreneur Media, 279 F.3d at 1144.  The color,
5 font, and imagery incorporated within the two marks are distinct
6 and distinguishable.  Nor do the two marks appear in the same
7 marketplace, as Healthvana's product is a phone app and Telebrands'
8 product is a physical good.  The similarity of the marks,
9 therefore, weighs only slightly in favor of confusion.

          4.   Actual Confusion

Although evidence of actual confusion is not required to
demonstrate a likelihood of confusion, it "is strong evidence that
future confusion is likely." Off. Airline Guides, Inc. v. Goss, 6
F.3d 1385, 1393 (9th Cir. 1993).  As an initial matter, the court
does not agree with Healthvana's assertion that it has presented
evidence of "hundreds of instances of actual confusion."  As this
Court has explained, "stand-alone enquiries and misdirected
communications" are not evidence of actual consumer confusion.
Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc., 402 F.
Supp. 3d 902, 910 (C.D. Cal. 2019) (discussing mis-addressed
mailings); see also Credit One Corp. v. Credit One Fin., Inc., 661
F. Supp. 2d 1134, 1140-41 (C.D. Cal. 2009) (communications intended
for one party but directed to another do not constitute evidence of
actual confusion).  Such evidence, rather, especially in electronic
formats, may demonstrate only that consumers were "inattentive or
careless, as opposed to being actually confused" about the source
of a product. Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623,
636 (6th Cir. 2002).  Nevertheless, Healthvana has presented

evidence that some consumers did believe that Healthvana was the company selling Healthvana-brand hand sanitizer. This evidence of actual confusion weighs in favor of a likelihood of confusion.

### 5. Marketing Channels

There is no dispute that, unlike Telebrands, Healthvana does not market its phone app through television advertising or big box retail stores. Nevertheless, Healthvana contends that a likelihood of confusion exists because all parties market their products on the internet. Courts have, in the past, concluded that "the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion." GoTo.com, 202 F.3d at 1207. That line of reasoning, however, has long since fallen by the wayside. Over a decade ago, the Ninth Circuit recognized that "[t]oday, it would be the rare commercial retailer that did _not_ advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." Network Automation, 638 F.3d at 1151 (emphasis added). This factor, therefore, weighs against a likelihood of consumer confusion.

### 6. Degree of Care Exercised by Consumers

Courts expect consumers to be "more discerning—and less easily confused," when purchasing expensive items. Brookfield, 174 F.3d at 1036. Similarly, a sophisticated consumer exercising a high degree of care is less likely to be confused by similar marks. Network Automation, 638 F.3d at 1152. Here, consumers of Healthvana's software product are sophisticated entities such as governments and laboratories who, if Healthvana's revenues are any indication, pay non-negligible amounts for Healthvana's services and products. Telebrands' consumers, on the other hand, are not

likely to be sophisticated or to exercise a high degree of care when purchasing a relatively inexpensive bottle of hand sanitizer. Although the Ninth Circuit has not spoken definitively as to what standard applies in "mixed buyer class" situations such as this one, the court has suggested that "the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer." GoTo.com, 202 F.3d at 1209 (9th Cir. 2000) (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 293 (3d Cir.1991); but see Cohn v. Petsmart, Inc., 281 F.3d 837, 843 n.9 (9th Cir. 2002) ("That standard, however, applies only when the plaintiff's products or services are marketed to different categories of purchasers, such as to both professional purchasers and the consuming public." (emphasis added)). Because Telebrands' customers exercise a low degree of care when purchasing inexpensive hand sanitizer, this factor weighs somewhat in favor of a likelihood of confusion.

### 7. Telebrands' Intent

The intent factor is of "minimal importance." GoTo.com, 202 F.3d at 1208. In any event, there is no evidence that Telebrands intended to confuse or deceive either its own or Healthvana's customers. Telebrands selected a brand name similar to its Hempvana branding yet evocative of health, and agreed to change that branding almost immediately when requested to do so. Although Healthvana makes much of the fact that Telebrands shipped out "Healthvana" labeled bottles even after agreeing to change its branding, the evidence is undisputed that the bottles had already been produced. A de-identification period spanning a matter of

weeks hardly constitutes evidence of any bad intent on Telebrands' part.

### 8. Expansion of Product Lines

There is no evidence that either party has any intention or plan of expanding into the others' product lines at any point in the future. This factor therefore weighs against a likelihood of confusion.

### 9. Balance of Sleekcraft factors

The balance of the Sleekcraft factors weighs against a likelihood of confusion. The actual confusion factor weighs in Healthvana's favor, and the strength of the mark, similarity of the marks, and degree of care factors weigh slightly in favor of confusion. The other factors, however, are either neutral or weigh against a likelihood of confusion. In particular, the relatedness of the goods, or lack thereof, weighs heavily against a likelihood of confusion. Telebrands is, therefore, entitled to summary judgment on Plaintiff's trademark claims.

## B. False Advertising

Telebrands contends that Healthvana's false advertising claims fail because the parties are not competitors, and because Healthvana has presented no evidence that Telebrands' advertising statements caused any quantifiable loss of money or property. First, "there is no doubt that the Supreme Court expressly rejected any requirement that a plaintiff show direct competition to prevail on a [Lanham Act] false advertising claim." Geiger v. Creative Impact Inc., No. CV-18-01443-PHX-JAT, 2020 WL 4583625, at *2 (D. Ariz. Aug. 10, 2020) (citing Lexmark International, Inc. v. Static Control Components, Inc., 572 U.S. 118, 136, 138-39 (2014)). Any

12

commercial injury, including harm to reputation, will suffice. Lexmark, 572 U.S. at 132; ThermoLife Int'l LLC v. Aesthetic Distribution, LLC, No. CV-19-02048-PHX-DJH, 2020 WL 12581996, at *4 (D. Ariz. Jan. 7, 2020). A plaintiff must, however, show injury "as a result of the false statement". Gaby's Bags, LLC v. Mercari, Inc., No. CR 20-00734 WHA, 2020 WL 1531341, at *2 (N.D. Cal. Mar. 31, 2020 (citing Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)). Where parties do not compete with each other, "it may be more difficult to establish proximate causation." Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC, 310 F. Supp. 3d 1089, 1106 (S.D. Cal. 2018).

Healthvana argues that it has presented evidence that consumers were very angry with Healthvana in the period following certain Telebrands advertisements. Although that evidence certainly indicates reputational harm to Healthvana, the link between consumer anger and the allegedly false statements is less clear. Healthvana's First Amended Complaint alleges that Telebrands falsely stated that its version of Healthvana was a "trusted brand since 2015," had "over 100 million satisfied customers," that Telebrands' sanitizer contained an ingredient used in hospitals, and that Telebrands had maintained a website since 2019, when in reality the website went live in 2020. Although the Declaration of Ramin Bastani refers to "hundreds of complaints," and Healthvana attaches an exhibit of over 600 pages of correspondence, Healthvana identifies no particular instance of a complaint related to any of Telebrands' alleged false statements.

Absent such evidence, Healthvana's Lanham Act claim cannot succeed.[3]

C.  Cybersquatting

Healthvana alleges that Telebrands violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), by registering the domain www.healthvanafoam.com with actual knowledge of Healthvana's registration of the Healthvana mark and without any fair use of Healthvana's mark on the website. ACPA "establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (internal quotation marks omitted). Telebrands argues that Healthvana cannot show bad faith.

"Bad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). In any event, "[t]he most important grounds for finding bad faith are the unique circumstances of the case." Interstellar Starship Servs., Ltd. v. Epix, Inc., 304 F.3d 936, 946 (9th Cir. 2002) (internal quotation marks and citation omitted). Healthvana's argument with respect to bad intent is not clear to the court. Healthvana appears to rely on the fact that Telebrands' website was still operational on April 4, four days after Telebrands

---

[3] Healthvana's false advertising claim under California Business & Professions Code § 17500 fails for the same reason.

14

voluntarily agreed to change its Healthvana branding. As discussed above, a de-identification period of less than one week hardly demonstrates bad faith or intent. Furthermore, given the court's trademark analysis, above, Telebrands' belief that its use of the domain name was lawful was a reasonable one. Healthvana's ACPA claim, therefore, fails.

## IV. Conclusion

For the reasons stated above, Telebrands' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: February 24, 2022

DEAN D. PREGERSON
United States District Judge

15